

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00120-CR

LETICIA BLEIL                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1399860R

----------

## OPINION

----------

## I. Introduction

The State used the law of parties to convict appellant Leticia Bleil of continuous sexual abuse of a child under the age of fourteen on the theory that on multiple occasions over the course of several months, Bleil traded sex with her twelve-year-old child T. to Thomas Lyle Crick in exchange for drugs and money.  *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2015).  In eight issues,

ranging from suppression of evidence and specificity of the indictment to sufficiency of the evidence and charge error, Bleil appeals. We affirm.

## II. Factual and Procedural Background

Twelve-year-old T. first met twenty-nine-year old Crick when she accompanied her mother—Bleil—to Crick's residence to purchase drugs. Upon arrival, Bleil and Crick retreated into the garage together while T. and her younger brother remained in the vehicle. Approximately ten minutes later, Bleil and Crick emerged from the garage and returned to the vehicle. Crick took a look at T. through the car window, turned to Bleil, and said, "I can make a 14-year-old girl scream." Bleil laughed in response.

Later that evening, Crick telephoned Bleil at her home, and after speaking with Crick for a few minutes, Bleil instructed T. to "pack a little bag" because, according to Bleil, T. was going to Crick's house "for babysitting." T. did as she was told—she packed a bag with some clothing inside in preparation to go to Crick's house for babysitting—even though her mother had not made babysitting arrangements for her two younger brothers and was not even leaving her house that evening. Nevertheless, Crick's mother, Junita, arrived at Bleil's home to pick up T. and then drove her to the house where Crick resided.[1] Crick was waiting at the door upon her arrival.

---

[1]Crick resided at his father's house at the time.

2

When she first entered the home, T. sat with Crick on the couch, and the two talked for a while. Eventually, they went into Crick's bedroom, where they sat on the bed and continued talking. At this point, T. said she realized that she would be staying overnight, so she offered to sleep on the floor. Crick declined her offer, assuring her that he would sleep on the floor instead, but when T. laid down on the bed, he laid down beside her, where, after having sex with her, he stayed for the remainder of the night.[2]

That night marked the first of many evenings over a four-month span that would begin with Junita delivering T. to Crick's doorstep and would conclude with sexual activities, including sexual intercourse, between Crick and T. After that first evening, Crick introduced T. to methamphetamine and began supplying her with it to smoke. With his mother's help, at some point, Crick also provided T. with "morning-after" pills, which T. would take after having sex with him.[3] Sometimes the next morning, other times days later, Junita would drive T. back home.[4] Crick also had T. take methamphetamine back to her mother.[5]

---

[2]T. testified that Crick gave her one of his t-shirts to wear, so she went to bed that evening wearing a t-shirt and panties.

[3]T. testified that sometimes Crick's mother would take her to "the Walgreens or CVS to go get it," or Junita "would just bring it."

[4]T. testified that she spent "a lot" of time at Crick's house—sometimes as long as a week in duration—during the four-month period. When she stayed at his house on school nights, she would miss school the next morning if she arrived home after the school bus had already come and gone. Other times, she would arrive in time to catch the bus and go to school. T. testified that Junita never drove her directly to school.

3

On the morning T. arrived home following her first visit to Crick's home, Bleil followed T. into her room and asked her if Crick had touched her or done anything to her. T. responded "no."[6] Bleil never inquired again. Also after that first occasion, Bleil never again referred to the arrangement between T. and Crick as "babysitting."

Four months later, when the police responded to a 911 complaint about a child at Crick's residence, T. had been staying at Crick's house for a period of several days. T. was described as drowsy, reeking of drugs and still under their influence, and reluctant to admit to having had sex with Crick when questioned. Only when her aunt[7] threatened to take her to the hospital for an examination did T. reveal the details about her frequent stays with Crick, the sexual assaults, and the drug use. Upon examination at Cook Children's Medical Center, T. tested positive for chlamydia.

The police conducted a search of Crick's home, and in his bedroom they found morning-after pills, condoms, petite- or child-sized lingerie,

---

[5]On at least one occasion, Crick placed methamphetamine intended for Bleil into T.'s bag and told her to give it to Bleil and to tell her that she "owes 30." When T. did so, Bleil "got mad that he . . . put it in [her] bag."

[6]T. testified that she answered "no" because she was "scared" and Crick had threatened her that something bad would happen if she told anyone. Crick had also told her that he was a member of the Aryan Brotherhood. He had a tattoo of Adolf Hitler on his stomach.

[7]T. did not go home to her mother that evening. Instead, T.'s aunt Barbara took T. to her home from the police station.

methamphetamine, and drug paraphernalia. After a warrant was issued for his arrest, Crick, who was on parole at the time, cut off his ankle monitor and fled.

The police questioned Bleil, who gave two interviews during the course of the investigation, both of which were recorded and portions of which were admitted into evidence and published to the jury at trial. During these interviews, Bleil admitted that Crick was her methamphetamine dealer. And, according to Detective Person, by way of explanation of the nature of the relationship between Crick, T., and herself—in an account that turns the commonly-understood concept of babysitting on its head—Bleil relayed that, as Crick had once explained to his father, *Crick was paying Bleil* so that *Crick could babysit T.*[8] Detective Person testified that when asked if she had ever received drugs in return for sending T. to Crick's house, Bleil nodded her head up-and-down, indicating yes. In her audio-recorded statement, Bleil agreed that she received drugs and money after sending her child to Crick, but she denied the existence of an arrangement to that effect, stating that she never asked him what the drugs and money were in exchange for.

---

[8]The second interview is the subject of Bleil's suppression motion. Upon further questioning during that interview, Bleil acknowledged that this arrangement made no sense.

Bleil moved to suppress her statements as involuntary—a result of improper promises and inducements by law enforcement and without the waiver of her rights to counsel and to remain silent and not make a statement. The trial court overruled the motion.

Bleil was charged with continuous sexual abuse of a child under the age of fourteen. The jury convicted Bleil, and the trial court assessed her punishment at thirty years' confinement.

### III. Sufficiency

In her first issue, Bleil argues that the trial court committed harmful error by overruling her motion for instructed verdict, asserting that there was insufficient evidence as a matter of law that she was a party to the offense.

### A. Standard of Review

A challenge to the denial of a motion for instructed verdict is actually a challenge to the sufficiency of the evidence. *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003); *Pollock v. State*, 405 S.W.3d 396, 401 (Tex. App.—Fort Worth 2013, no pet.). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

To determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *see Crabtree v. State,* 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The

6

essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Thomas*, 444 S.W.3d at 8. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements."). A person can be convicted as a party even if the indictment does not explicitly charge her as a party. *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

The State charged Bleil with having, on or about September 22, 2012 through January 24, 2013,

> intentionally or knowingly, during a period of time that is 30 days or more in duration, commit[ted] two or more acts of sexual abuse, to wit: aggravated sexual assault of a child by causing the sexual organ of Thomas Crick to contact the sexual organ of [T.] and/or by causing the mouth of Thomas Crick to contact the sexual organ of [T.], and/or by causing the mouth of [T.] to contact the sexual organ of Thomas Crick, and/or by causing Thomas Crick to penetrate the sexual organ of [T.] by inserting his finger into her sexual organ, and/or indecency with a child by causing [T.] to contact the genitals of Thomas Crick, and/or by causing Thomas Crick to contact the genitals of [T.], and at the time of the commission of each of these

7

acts of sexual abuse the defendant was 17 years of age or older and [T.] was younger than 14 years of age.

*See* Tex. Penal Code Ann. § 21.02(b). The statute defines "act of sexual abuse" as any act in violation of one or more of several penal laws—as pertinent here— penal code section 21.11(a)(2), indecency with a child, and penal code section 22.021, aggravated sexual assault of a child. *Id.* § 21.02(c)(2), (4).

Under the law of parties, the State is able to enlarge a defendant's criminal responsibility to include acts in which he or she may not have been the principal actor. *Ryser v. State*, 453 S.W.3d 17, 28 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Goff v. State,* 931 S.W.2d 537, 544 (Tex. Crim. App. 1996)). A person is criminally responsible as a party to an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or by both, and each party to an offense may be charged with commission of the offense. Tex. Penal Code Ann. § 7.01(a)–(b) (West 2011). A person is criminally responsible for another's conduct if, acting with the intent to promote or assist the commission of the offense, she solicits, encourages, directs, aids, or attempts to aid the other person in committing the offense or, having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, she fails to make a reasonable effort to prevent commission of the offense. *Id.* § 7.02(a)(2), (3) (West 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v.*

8

*State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

## B. Analysis

Bleil argues that while there is no doubt that Crick committed the offense of continuous sexual abuse of a child, there is no direct evidence that she, "although exercising extremely poor judgment, knew that her daughter, T[.], was being continuously sexually assaulted." But the standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). Intent may be inferred from circumstantial evidence such as acts, words, and the appellant's conduct. *Guevara v. State*, 152 S.W.3d 45, 50–52 (Tex. Crim. App. 2004) (stating that implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt).

9

Further, circumstantial evidence may be used to prove party status as long as there is sufficient evidence of an understanding and common design to commit the offense. *See Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015); *see also Banos v. State*, No. 13-14-00307-CR, 2016 WL 757792, at *4 (Tex. App.—Corpus Christi Feb. 25, 2016, no. pet.) (mem. op., not designated for publication) (holding evidence sufficient when it showed mother's role in encouraging and aiding the sexual abuse by knowingly forcing her daughter to go to her father-abuser, as well as concealing the aftermath with lies and violence, despite her duty as the child's mother to take reasonable action to prevent the abuse); *Rainey v. State*, No. 03-11-00741-CR, 2013 WL 692477, at *4 (Tex. App.—Austin Feb. 22, 2013, pet. ref'd) (mem. op., not designated for publication) (stating that Rainey would be guilty as a party to aggravated sexual assault in the gang rape context if he encouraged, directed, aided, or attempted to aid an assailant who, as the principal actor, penetrated K.B.'s mouth with his sexual organ, while that assailant worked in concert with another who also committed sexual assault).

Based on the record as set out in our factual recitation above, the jury could have found that Bleil, a methamphetamine user, deliberately made her daughter sexually available to Crick, her methamphetamine dealer who professed, after having first eyed T., that he could "make a 14-year-old girl scream," for overnight and weekend stays in his home in exchange for home delivery of methamphetamine over the course of several months, making her a

10

party to the continuous-sexual-abuse offense. *See Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010) (holding evidence sufficient for murder conviction when, among other things, a rational trier of fact could have found that appellant was less than truthful about his involvement when he made his videotaped statement to the police). The jury's verdict in this case is rationally supported by common sense, logical references from the circumstantial evidence, and sufficient evidence to support Bleil's conviction. *See id.* at 201–02; *see also Beltran*, 472 S.W.3d at 290 (requiring sufficient evidence of understanding and common design for party liability); *Simon v. State*, 743 S.W.2d 318, 321 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (holding the evidence sufficient to convict appellant-wife as a party to her husband's sexual-assault-of-a-child offense based on her affirmative conduct that constituted a culpable act of aiding in the offense's commission and to support the inference of her participation in the offense as a party even though she was not present on the date of the particular act of intercourse at issue). We overrule Bleil's first issue.

## IV. Indictment

In her second issue, Bleil contends that the trial court erred by overruling her motion to quash the indictment. In her fifth issue, Bleil blends a complaint about charge error with a complaint about the indictment, arguing that the trial court erred by submitting "indecency with a child" in the charge because she was not indicted for being a party to indecency with a child and that even though

11

indecency with a child is one of several ways that continuous sexual abuse of a child can be committed, it did not obviate the necessity to specifically allege the underlying offenses in the indictment against which she had to defend herself.

The sufficiency of an indictment is a question of law reviewed de novo. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009), *cert. denied,* 559 U.S. 975 (2010). An indictment must be specific enough to inform the defendant of the nature of the accusations against her so that she may prepare a defense. *Id.* However, this due process requirement may be satisfied by means other than the language in the charging instrument, and when a motion to quash is overruled, a defendant suffers no harm unless she did not, in fact, receive notice of the State's theory against which she would have to defend. *Id.*; *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003).

Bleil complains that the indictment was not sufficiently specific to indicate how she could be guilty as a party to continuous sexual abuse of a child.[9] Bleil states that the indictment alleges only that between September 22, 2012, and January 24, 2013, Crick committed two or more acts of sexual abuse on T. and then lists multiple types of sex acts, which she contends is confusing, vague, indefinite, and thus insufficient to give her notice as to when and what acts were committed by Crick that could be criminally imputed to her.

---

[9]In her fourth and fifth issues, Bleil characterizes her complaints as jury charge error but primarily complains about the sufficiency of the indictment to support the jury charge.

12

As stated above in our sufficiency discussion, a person can be convicted as a party even if the indictment does not explicitly charge her as a party. *See Powell*, 194 S.W.3d at 506. Likewise, generally, an indictment that tracks the statutory language proscribing certain conduct possesses sufficient specificity to provide the defendant with notice of the charged offense. *See State v. Edmond*, 933 S.W.2d 120, 127 (Tex. Crim. App. 1996); *Pollock*, 405 S.W.3d at 403. When a statute defines the manner or means of committing an offense, an indictment based upon that statute need not allege anything beyond that definition. *Edmond*, 933 S.W.2d at 130. And, with regard to the continuous-sexual-abuse statute, while the State must provide the defendant with notice of the time period in which the continuous sexual abuse is alleged to have occurred, it is not necessary for the State to allege the exact dates on which the predicate acts of sexual abuse occurred, as those dates are not essential to the State's case and are considered to be evidentiary facts only.[10] *Holton v. State*, No. 08-

---

[10]Penal code section 21.02(d) requires jurors to be unanimous as to the *commission* of two or more acts of sexual abuse over a thirty-day period, but it does not require that they agree unanimously on *which* specific acts of sexual abuse were committed by the defendant or the exact date on when those acts were committed. Tex. Penal Code Ann. § 21.02(d); *Pollock*, 405 S.W.3d at 405; *see Jefferson v. State*, 189 S.W.3d 305, 312–13 (Tex. Crim. App.) (stating, in injury-to-a-child case, that the essential element or focus of that statute is the result (injury) and not the possible combinations of conduct that cause the result and that dispensing with unanimity on the means does not violate due process because the acts or omissions that combine to establish the offense are "basically morally and conceptually equivalent"), *cert denied*, 549 U.S. 957 (2006). That is, it is the pattern of behavior or the series of acts that is the element upon which the jurors must be unanimous in order to convict. *Pollock*, 405 S.W.3d at 405.

13-00220-CR, 2015 WL 4878608, at *6 (Tex. App.—El Paso Aug. 14, 2015, no pet.). Here, as set out above, the indictment tracked the language of the applicable criminal statute for continuous sexual abuse of a child and alleged a variety of acts of sexual abuse during the September-to-January time period while the victim was younger than age fourteen.

Further, as pointed out by the State, Bleil also received ample notice of the State's theory of criminal liability. The State filed notices of T.'s outcry statements pursuant to code of criminal procedure article 38.072 on January 15, 2015. The outcry statements contained T.'s version of events as recited by her in her forensic interview and as she told one of her aunts, all of which paralleled her detailed trial testimony. And Bleil herself acknowledged the State's theory of criminal liability in her motion to quash, which she filed a few weeks later:

> The State's theory in the case is that the defendant Bleil provided her daughter [T.] to a codefendant, Thomas Crick, and that defendant Crick engaged in sexual activities with [T.]. At the time of these sexual activities, [T.] was under the age of 14 years. The State's theory is that defendant Bleil provided her daughter to defendant Crick with the intent and understanding that defendant Crick would engage in sexual activities with [T.] and that in exchange, defendant Bleil would receive from defendant Crick illegal drugs including methamphetamine. Thus the State's theory is that defendant Bleil was a party[] to underlying offenses of trafficking.[11] aggravated sexual assault and indecency with a child.

---

[11]The State later moved to strike the trafficking portion of the indictment, and Bleil agreed.

14

At a pretrial hearing on April 6, 2015, the trial court asked Bleil if she understood the allegations and what she was charged with by the indictment, and Bleil replied, "Yes, sir."

While Bleil contends that the State should have specified the dates when Crick's various acts of sexual abuse of her daughter occurred, she does not explain how her perceived deficiencies in the indictment impaired her ability to prepare a defense. To the contrary, the acknowledgement in her motion to quash that the State planned to prosecute her based on a theory that she paid for drugs continuously over a four-month period by bartering sexual use of her daughter's body to Crick evidences ample understanding of the nature of the accusations levied against her, thus demonstrating that Bleil received notice sufficient to comply with our federal and state due process requirements. *See Smith*, 297 S.W.3d at 267. We overrule Bleil's second issue.

We likewise overrule Bleil's fifth issue. Bleil complained at the charge conference that the indictment did not include "the sexual desire element" in its indecency allegations,[12] and she asked that the two indecency-with-a-child

---

[12]A person commits indecency with a child if, with a child younger than seventeen years of age, (1) he or she engages in sexual contact with the child or causes the child to engage in sexual contact; or (2) with intent to arouse or gratify the sexual desire of any person, he or she: (A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or (B) causes the child to expose the child's anus or any part of the child's genitals. Tex. Penal Code Ann. § 21.11(a) (West 2011). The indictment and charge did not include subsection (2). Section 21.11(c) states that "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing of the

15

theories set out in the charge be stricken. Bleil stated during the charge conference that she objected to the submission of the indecency theories "simply because the indictment does not make that allegation."

The indictment charged Bleil with having "intentionally or knowingly, during a period of time that is 30 days or more in duration, commit[ted] two or more acts of sexual abuse, to wit: . . . indecency with a child." As pointed out by the State and acknowledged by defense counsel during the charge conference, Bleil did not raise this complaint about the indictment before trial on the merits began. *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West 2005) (stating that if a defendant does not object to a defect, error, or irregularity of form or substance in an indictment before the date on which trial on the merits commences, he waives or forfeits the right to object to the defect, error, or irregularity and may not raise the objection on appeal or in any other postconviction proceeding); *see Jacobsen v. State,* 325 S.W.3d 733, 740 (Tex. App.—Austin 2010, no pet.) ("Appellant's pretrial motion to quash did not complain of the indictment's failure to allege a culpable mental state, and this issue was not raised at the hearing on the motion. If the indictment was defective for this reason, appellant forfeited his right to complain by failing to timely object.").

---

anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* § 21.11(c).

16

Further, indecency with a child was one of many potential "act[s] of sexual abuse" listed in the continuous-sexual-abuse-of-a-child statute with which Bleil was charged, *see* Tex. Penal Code Ann. § 21.02(c)(2),[13] and both the indictment and charge listed which acts of indecency would support such a conviction. The indictment listed, among others, the following as acts that qualified to support "acts of sexual abuse" for the continuous-sexual-abuse-of-a-child offense: "*indecency with a child* by causing [T.] to contact the genitals of Thomas Crick, and/or by causing Thomas Crick to contact the genitals of [T.]" [Emphasis added.] These two allegations followed an introduction that made clear that these were acts of sexual abuse and followed the aggravated-sexual-assault-of-a-child allegations.

Even if Bleil had preserved her objection to the indictment on this issue, in light of our discussion above, the acts were sufficiently charged in the indictment under the circumstances here to provide her with adequate notice for preparing her defense, and the indecency paragraphs included in the jury charge were necessary as part of the manner and means of committing continuous sexual abuse of a child.[14] *See Casey v. State*, 349 S.W.3d 825, 829 (Tex. App.—El

---

[13]For purposes of the continuous-sexual-abuse-of-a-child statute, "act of sexual abuse" means any act that is in violation of one or more of eight penal laws. Tex. Penal Code Ann. § 21.02(c). Indecency with a child under section 21.11(a)(1) qualifies as an act of sexual abuse under section 21.02(c) "if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child." *Id.* § 21.02(c)(2).

[14]The abstract portion of the charge stated,

17

Paso 2011, pet. ref'd) (explaining that the alternate manners and means in section 21.02 all involve actual or intended sexual abuse of a child, all are felonies, all are morally equivalent, and all are conceptually similar); *see also Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011) ("Trial courts are obliged to instruct juries on 'the law applicable to the case,' which includes the statutory definitions that affect the meaning of the elements of the offense."). We overrule Bleil's fifth issue.

---

> Our law provides that a person commits the offense of indecency with a child if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person engages in sexual contact with the child or causes the child to engage in sexual contact.

*See* Tex. Penal Code Ann. § 21.11(a)(1). The charge then defined "sexual contact" with the pertinent parts of the indecency-with-a-child statute regarding genital contact, stating,

> "Sexual contact" means any touching by a person, including touching through clothing, of any parts of the genitals of a child or touching any part of the body of a child, including touching through clothing, with any part of the genitals of a person, with the intent to arouse or gratify the sexual desire of any person.

*Id.* § 21.11(c). The application portions of the charge paralleled the abstract, stating:

> . . . and/or indecency with a child by causing [T.] to contact the genitals of Thomas Crick with the intent to arouse or gratify the sexual desire of Thomas Crick, and/or by causing Thomas Crick to contact the genitals of [T.] with the intent to arouse or gratify the sexual desire of Thomas Crick . . . .

18

## V. Suppression

In her third issue, Bleil argues that the trial court erred by overruling her motion to suppress her oral statement in State's Exhibit 2[15] because she never waived her *Miranda*[16] and article 38.22 rights. [17] She also claims that the trial court's admitting her oral statement violated her rights in that her confession was involuntary because of improper promises and inducements made to her by law enforcement. *See, e.g.*, *Miller v. State*, 196 S.W.3d 256, 266 (Tex. App.—Fort Worth 2006, pet. ref'd) (stating that a confession may be deemed "involuntary" under three different theories: failure to comply with article 38.22, failure to comply with *Miranda*'s dictates, or failure to comply with due process or due course of law because the confession was not freely given as a result of coercion, improper influences, or incompetency).

---

[15]At the suppression hearing, the trial court stated that the first interview, which was videotaped, was noncustodial, while the second interview, which was an audio recording, was custodial and that the suppression motion pertained only to the audio recording.

[16]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[17]Article 38.22 presents the state equivalent of the custodial-interrogation warnings required by *Miranda* regarding the rights to remain silent, to have a lawyer—or appointed lawyer—present for advice before and during questioning, and to knowingly, intelligently, and voluntarily waive the rights before and during the statement. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (West Supp. 2015) (incorporating warnings required in section 2(a)); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The warnings in article 38.22, section 2(a) "are virtually identical to the *Miranda* warnings, with one exception—the warning that an accused 'has the right to terminate the interview at any time' as set out in Section 2(a)(5) is not required by *Miranda*." *Herrera*, 241 S.W.3d at 526 (footnotes omitted).

The State responds that Bleil received her article 38.22 warnings in writing and orally, which she waived prior to questioning, and that Bleil's written notation on the "Voluntary Statement" paperwork to the effect that she did not want to make a statement was made near the end of her oral statement and referred exclusively to her unwillingness to provide a separate written statement. The burden of proof at a hearing on admissibility is on the prosecution, which must prove by a preponderance of the evidence that the defendant's statement was given voluntarily. *Miller*, 196 S.W.3d at 266.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.

*Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

With regard to the first portion of Bleil's argument—that she never waived her *Miranda* and article 38.22 rights—the trial court read the following fact findings into the record:

21

that prior to the interview, which was recorded and is preserved for the record of this trial as State's Exhibit 2-A, that [Bleil] was read her 38.22 statutory rights, they were explained to her in plain English; that at the conclusion of the reading of those rights she was asked if she understands to please initial next to each right, and the initials "LB" appear on the face of what is in evidence for the record of this hearing as State's No. 2-B, which is consistent with the audio portion, even though there's not a video observing the initials, but the "LB" initials seem to be consistent with the "Leticia L. Bleil" signature at the bottom of the page, which was referred to later in a part of the interview which will not be published to the jury after the "I do not wish to make a statement at this moment" discussion that took place previously; that on the face of the audio the detective told her, "If you understand your rights and wish to make a statement as indicated and summarized the language below the 38.22 warnings, just sign here that you're willing to do so," words to that effect. She did sign and date below not only the acknowledgment of the rights that are initialed but the willingness to talk.

We have reviewed the audio-recording and the written warnings marked with "LB" and Bleil's signature. We find that these support the trial court's fact findings that Bleil received her warnings in compliance with article 38.22. *See Leza v. State*, 351 S.W.3d 344, 353 (Tex. Crim. App. 2011) ("[W]e have consistently held that waiver of Article 38.22 rights 'may be inferred from actions and words of the person interrogated.'"). The article 38.22 warnings at issue also sufficed to comply with *Miranda*. *See Herrera*, 241 S.W.3d at 526. Therefore, we overrule this portion of Bleil's third issue.

With regard to the remainder of Bleil's third issue, regarding whether her confession was involuntary because of improper promises and inducements made to her by law enforcement, Bleil does not direct us to any false promises or

22

inducements made during the interview or at any other time.  The trial court read

the following findings and conclusions into the record:

> I will acknowledge . . . for the record, that there was discussion about bond at her direction, not the detective's, and asked repeatedly, if she talked, "does it mean I'm going to get out" and she was repeatedly told no.  And later, after pushing the issue, advised "if you can't get out in the jail," words to the effect, "to get a lawyer, you can ask for a bond reduction at the County," that the detective tried to sidestep, like "I have no control over your bond issue.  That was set by the judge."
>
> And then after that conversation and interview began -- and I did not listen to the 50-some-odd minutes prior to the discussion of a potential written statement, but I did listen for five or six minutes into it to listen to the nature and the tone of the conversation on behalf of the detective and the Defendant,[18] and it appeared on its face to be a typical conversation with no evidence of coercion and was consistent with the acknowledgment and waiver of rights that took place.
>
> And, therefore, as a matter of fact and as a matter of law, I believe the Defendant was warned of her statutory rights and for constitutional and statutory purposes waived those rights and voluntarily agreed to an interview.  And based upon that, Defense motion to suppress the entire statement will be denied for those reasons and such others as are proper in law and fact.

The statement of an accused may be used in evidence against him

provided it was "freely and voluntarily made without compulsion or persuasion."

Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005).  "[F]or a promise to render a

confession invalid under Article 38.21, the promise must be positive, made or

---

[18]We note that listening for "five or six minutes" is not consistent with the standard that voluntariness be decided by considering the *totality* of the circumstances under which the statement is obtained.  *See Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997).

23

sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully." *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). Further, in determining whether a suspect "knowingly, intelligently, and voluntarily" waived her rights set out in article 38.22, the behavior of the police may or may not be a factor—the voluntariness of a confession may be called into question if the defendant is under the duress of hallucinations, illness, medications, private threat, or mental retardation or as a result of youth or other disabilities. *See Oursbourn v. State*, 259 S.W.3d 159, 171–72 (Tex. Crim. App. 2008) (explaining fact scenarios that can raise a state-law claim for involuntariness that would not raise a federal constitutional claim).

We have listened to the entire audio recording and conclude, based on the totality of the circumstances, that the recording supports the trial court's findings and conclusions that Bleil's statement was voluntary. *See Creager*, 952 S.W.2d at 855. We overrule the remainder of Bleil's third issue.

## VI. Jury Charge

During trial, Bleil objected to the inclusion of a family code provision and to the unanimity instruction, both of which the trial court overruled, and she requested a special instruction on the law of parties and a lesser-included offense instruction, both of which the trial court denied. In her remaining issues, Bleil challenges these decisions by the trial court.

24

## A. Standard of Review

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.* A properly preserved error will require reversal as long as the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

## B. Charge

In addition to defining various terms, the charge set out as follows:

> You are further instructed that in order to find the Defendant guilty of the offense of continuous sexual abuse of a young child, you are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the Defendant or the exact date when those acts were committed, if any. However, *in order to find the Defendant guilty of the offense of continuous sexual abuse of a young child, you must unanimously agree that the Defendant, during a period that is 30 or more days in duration, on or about the 22nd day of September, 2012 through the 24th day of January, 2013, as charged in the indictment, committed two or more acts of sexual abuse*. [Emphasis added.]

> . . . .

> A person is criminally responsible as a party to an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or by both.

> Each party to an offense may be charged with commission of the offense.

25

A person is criminally responsible for an offense committed by the conduct of another if:

1) acting with intent to promote or assist the commission of the offense, she encourages, aids, or attempts to aid the other person to commit the offense; OR

2) having a legal duty to prevent commission of an offense and acting with intent to promote or assist its commission, she fails to make a reasonable effort to prevent commission of the offense.

Mere presence alone will not constitute one a party to an offense.

Our law provides that the parent of a child has the legal duty of care, control, protection, and reasonable discipline of the child.

Now, if you find from the evidence beyond a reasonable doubt that Thomas Crick . . . on or about the 22nd day of September 2012 through the 24th day of January 2013, did then and there intentionally or knowingly, during a period of time that is 30 or days more [sic] in duration, commit two or more acts of sexual abuse, to wit: aggravated sexual assault of a child by causing the sexual organ of Thomas Crick to contact the sexual organ of [T.], and/or by causing the mouth of Thomas Crick to contact the sexual organ of [T.], and/or by causing the mouth of [T.] to contact the sexual organ of Thomas Crick, and/or by causing Thomas Crick to penetrate the sexual organ of [T.] by inserting his finger into her sexual organ, and/or indecency with a child by causing [T.] to contact the genitals of Thomas Crick with the intent to arouse or gratify the sexual desire of Thomas Crick, and/or by causing Thomas Crick to contact the genitals of [T.] with the intent to arouse or gratify the sexual desire of Thomas Crick, and at the time of the commission of each of these acts of sexual abuse the Defendant was 17 years of age or older and [T.] was younger than 14 years of age, *AND that the Defendant, Leticia Bleil, acting with intent to promote or assist the commission of the offense, did encourage, aid, or attempt to aid the said Thomas Crick to commit said offense*; OR

If you find from the evidence beyond a reasonable doubt that Thomas Crick . . . on or about the 22nd day of September 2012 through the 24th day of January 2013, did then and there intentionally or knowingly, during a period of time that is 30 days or

26

more in duration, commit two or more acts of sexual abuse, to wit: aggravated sexual assault of a child by causing the sexual organ of Thomas Crick to contact the sexual organ of [T.], and/or by causing the mouth of Thomas Crick to contact the sexual organ of [T.], and/or by causing the mouth of [T.] to contact the sexual organ of Thomas Crick, and/or by causing Thomas Crick to penetrate the sexual organ of [T.] by inserting his finger into her sexual organ, and/or indecency with a child by causing [T.] to contact the genitals of Thomas Crick with the intent to arouse or gratify the sexual desire of Thomas Crick, and/or by causing Thomas Crick to contact the genitals of [T.] with the intent to arouse or gratify the sexual desire of Thomas Crick, and at the time of the commission of each of these acts of sexual abuse the Defendant was 17 years of age or older and [T.] was younger than 14 years of age, *AND that the Defendant, Leticia Bleil, having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, she failed to make a reasonable effort to prevent commission of the offense then you will find the Defendant guilty of the offense of continuous sexual abuse of a young child, as charged in the indictment.*

. . . .

Your verdict must be by unanimous vote of all members of the jury. . . .

[Emphasis added.]  The verdict form, signed by the presiding juror, provided for the jury to find Bleil not guilty or to find her guilty of the offense of continuous sexual abuse of a young child.

## C.  Unanimity and the Family Code Provision in the Charge

In her sixth issue, Bleil contends that the trial court erred by submitting a charge that did not require unanimity among the jurors for a specific finding of guilty.  Bleil argues that the submitted charge exceeded due process because it alleged that she was alternatively guilty (1) as a party for sending T. to Crick's home to have sex with him and (2) as directly culpable for violating her duty as a

27

parent to protect and prevent such abuse. In her fourth issue, Bleil contends that the trial court erred by overruling her objection to the charge instruction on the family code theory.[19]

Jury unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). In other words, every juror must agree that "the defendant committed the same, single, specific criminal act." *Id.*; *Bundy v. State*, 280 S.W.3d 425, 431 (Tex. App.—Fort Worth 2009, pet. ref'd). The charge here—instead of setting out two distinct criminal acts—provided the jury with alternate theories of the same offense. In one, Bleil assisted Crick by encouraging him to commit the sexual abuse of her daughter in exchange for drugs; in the other, she betrayed a parent's legal duty to her daughter by assisting Crick to commit the sexual abuse of her daughter in exchange for drugs. In both cases, Bleil met the elements of acting as a party to the continuous sexual abuse of her daughter—the result of her actions. That is, Bleil did not directly sexually assault the child herself but provided the encouragement and means by which Crick was able to do so in exchange for providing her with her drug of choice. Because the charge in this case merely gave the jury alternate means of committing the same offense—continuous sexual abuse of a

---

[19]The trial court submitted the instruction under family code section 151.001(a)(2), invoking penal code section 7.02(a)(3). Family code section 151.001(a)(2) states that a parent of a child has the following rights and duties: "the duty of care, control, protection, and reasonable discipline of the child." Tex. Fam. Code Ann. § 151.001(a)(2) (West 2014).

28

child as a party—we conclude that the charge did not violate the unanimity requirement, and we overrule Bleil's sixth issue.[20]  *See Pollock*, 405 S.W.3d at 405.

Further, when, as here, a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict will stand if the evidence is sufficient to support a finding of guilt based on at least one of the valid theories, even if the other theory was erroneously submitted to the jury.  *Sanchez v. State*, 376 S.W.3d 767, 775–76 (Tex. Crim. App. 2012) (op. on reh'g).  Because, as set out above in our factual recitation and our sufficiency analysis, the evidence is sufficient to support Bleil's conviction on the State's non-family-law-related theory, we overrule Bleil's fourth issue without needing to reach the merits of her argument.  *See* Tex. R. App. P. 47.1.

**D. Law of Parties**

Bleil requested the following instruction:  "You are instructed a person is not guilty as a party even though he aids a principal actor where he is without knowledge of the principal's criminal intent and his conduct is not inherently criminal in nature."  The trial court denied her request, stating that it was a

---

[20]To the extent Bleil also argues that the jury did not have to be unanimous as to the sexual offenses committed by Crick, "Texas intermediate courts have routinely held that the individual acts of sexual abuse are manner and means, not an element of the offense, and section 21.02 does not violate the jury unanimity requirement."  *Fulmer v. State*, 401 S.W.3d 305, 312 (Tex. App.—San Antonio 2013, pet. ref'd), *cert. denied*, 134 S. Ct. 436 (2013).

29

potential comment on the weight of the evidence[21] and was not a legally required instruction.[22]  In her seventh issue, Bleil argues that the trial court erred by failing to give her proposed instruction.

Bleil claims that although she may have sent T. to Crick's house, she did not know she was committing a crime by doing so, and she relies on *Amaya v. State*, 733 S.W.2d 168, 174 (Tex. Crim. App. 1986), to support her argument. But, as pointed out by the State, *Amaya* involved a challenge to the sufficiency of the evidence, not to the jury charge,[23] and we have already held that the evidence is sufficient to support Bleil's conviction.

---

[21]*Cf. Bartlett v. State*, 270 S.W.3d 147, 151–52 (Tex. Crim. App. 2008) (setting out three specific circumstances under which the trial court may single out a particular item of evidence in the charge without making an impermissible comment).

[22]In contrast, when a rule or statute *requires* an instruction under the particular circumstances of the case, that instruction is "the law applicable to the case."  *See Oursbourn*, 259 S.W.3d at 180.  Other than her citation to *Amaya*, Bleil directs us to no rule or statute that required the instruction that she requested.

[23]Amaya and four others were tried jointly and convicted of misapplication of fiduciary property.  733 S.W.2d at 169.  The evidence showed Amaya was aware of the source of the money at issue and his active participation in its disposition, and the court of criminal appeals stated that *if* he could be treated as a primary actor in the offense, then his conviction would be affirmed.  *Id.* at 173. However, the evidence did not show that Amaya acted in a fiduciary capacity when he took part in the transactions at issue, leaving him subject to criminal liability only under the law of parties.  *Id.* at 173–74.  And the court held that the evidence was not sufficient to support holding him accountable as a party when there was no indication that he knew that his conduct assisted in the commission of an offense.  *Id.* at 174.  That is, Amaya's defense centered not on ignorance of the conduct (dispersal of funds to fiduciaries) but on ignorance that the conduct constituted an offense at all because the conduct—dispersing money—was not

30

In addition to the portions of the charge set out above, the trial court defined intent[24] and knowledge.[25] Granting Bleil's requested instruction would therefore have been redundant, in addition to confusing to the jury. *Cf. Bartlett*, 270 S.W.3d at 151 (stating that the trial court may single out a particular item of evidence in the jury instruction when the law directs it to attach a certain degree of weight, e.g., a limiting instruction; when the legislature has expressly required the trial court to call particular attention to specific evidence, e.g., a predicate fact as set out in a statutory presumption; or when the trial court may instruct the jury with respect to evidence that is admissible contingent upon certain predicate facts that the jury has to decide, e.g., an instruction under article 38.23). A judicial instruction that singles out a particular piece of evidence without meeting one of the three legally authorized purposes set out in *Bartlett* risks impinging upon the jury's independence in its role as trier of the facts. *Id.* at 151–52. We

---

inherently criminal, unlike, for example, engaging in sexual activity with a child. *Id.* at 174–75.

[24]As set out in the charge and in the penal code, a person acts intentionally, or with intent, with respect to the nature of her conduct or to a result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. § 6.03(a) (West 2011).

[25]As set out in the charge and in the penal code, a person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(b) (West 2011).

31

conclude that the trial court did not err by denying Bleil's requested instruction, and we overrule her seventh issue.

## E. Lesser-Included Offense Instruction

In her eighth issue, Bleil argues that the trial court erred by not submitting a lesser-included offense instruction. Bleil states that any one act of sexual abuse would be a lesser-included offense of continuing sexual abuse of a child, as either indecency or sexual assault of a child and that if thereby properly instructed, the jury could have concluded that she only knew the first time but not necessarily on the subsequent occasions.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure.[26] Tex. Code Crim. Proc.

---

[26]Under article 37.09, an offense is a lesser-included offense if:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Ann. art. 37.09; *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). The State concedes that aggravated sexual assault of a child and indecency with a child are lesser-included offenses of continuous sexual abuse. *See Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011) ("To the extent that a continuous-sexual-abuse indictment alleges certain specific offenses, an 'offense listed under Subsection (c)' [of the continuous-sexual-abuse statute] will *always* meet the first step of the *Hall* analysis.").

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, she is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting her of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

Relying on her first issue, Bleil argues that "[t]he jury may . . . not have had sufficient evidence . . . to know when certain acts of sexual abuse occurred" and should have been allowed to conclude that only one act of sexual abuse—

Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006).

indecency or aggravated sexual assault of a child—had occurred "without concluding that there were two or more incidents of sexual abuse to which [Bleil] could have been imputed to have known criminally as a party had occurred. In other words, they could conclude she knew the first time but not necessarily on subsequent occasions." The State replies that there is no evidence in the record that would have allowed a rational jury to conclude that Bleil was guilty only of the lesser offenses.

Bleil's theory at trial was that she had had no idea what was going on, and her theory on appeal in her sufficiency challenge was that although she "exercise[d] extremely poor judgment," there was no evidence that she knew T. was being continuously sexually assaulted or any direct proof that Bleil knew T. was having sex with Crick. With regard to the requested lesser-included-offense instruction, Bleil's counsel candidly admitted during the charge conference, "I don't know that there's a specific event in a case that narrows and talks about somebody knowing of only one instance because there's no evidence about anybody knowing of anything, other than circumstantially."

And Bleil's argument on appeal that the jury could have concluded that Bleil "knew the first time but not necessarily on subsequent occasions," defies both logic and law. If the jury found that Bleil knew that Crick had sexually assaulted T. when she sent her on the first overnight stay, no rational jury could have concluded that when Bleil repeated the process she did so without knowledge that a similar outcome was reasonably certain to occur. *See* Tex.

34

Penal Code Ann. 6.03(b) ("A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.").

The trial court denied the request based on the lack of any evidence to show that if Bleil was guilty, she was guilty of only one count of aggravated sexual assault or indecency with a child. Based on the record before us, we agree with the trial court's determination, and we overrule Bleil's final issue. *See Brown v. State*, 381 S.W.3d 565, 583 (Tex. App.—Eastland 2012, no pet.) (reaching same conclusion when record reflected numerous instances of sexual abuse over the course of several years).

## VII. Conclusion

Having overruled all of Bleil's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

PUBLISH

DELIVERED: June 9, 2016

35