

**NUMBER 13-17-00493-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

FACUNDA NEVAREZ,                                                   Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Chief Justice Contreras

Pursuant to the law of parties, appellant Facunda Nevarez was convicted of continuous sexual abuse of a young child, a first-degree felony, and she was sentenced to thirty years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 7.02(a), 21.02(b). By four issues, appellant contends the trial court erred in (1) allowing evidence of extraneous

offenses, (2) denying her motion for directed verdict, (3) admitting evidence of her written statement to police, and (4) denying her request for a jury instruction on a lesser-included offense.  We affirm.

## I. BACKGROUND

A Hidalgo County grand jury returned an indictment alleging that, from on or about September 1, 2009 to on or about June 1, 2013, appellant committed two or more acts of sexual abuse against her daughter L.M.[1]  *See id.*  The indictment identified the acts of sexual abuse as "aggravated sexual assault of a child by intentionally or knowingly causing the penetration of the sexual organ of [L.M.] by defendant's finger," and "indecency with a child by contact, by[,] with intent to arouse or gratify the sexual desire of the defendant, engaging in sexual contact with [L.M.], by touching any part of the genitals of [L.M.]."

### A.    L.M.

L.M., who was twelve years old and in seventh grade at the time of trial, testified that appellant is her mother and her father's name is Manuel.  She stated she used to live in Mission, Texas with her parents, her sister, and her brother, though she frequently traveled back and forth to Reynosa, Mexico, where her two other adult sisters lived.

L.M. testified that her father "would do stuff that I didn't like . . . .  He would touch my body parts."  She stated he used his hands to touch her "private."  On a diagram depicting a young girl's body, L.M. circled the breasts and vaginal area to indicate where on her body Manuel touched her.  She stated he touched her "boobies" underneath her

---

[1] We refer to L.M. and her siblings by initials to protect their identity.

clothes more than one time, starting when she was five years old. He would also "introduce his fingers" into her vagina and "put them inside." L.M. stated that this also happened more than once, that it started when she was in first grade, and that the last time it happened was when she was in third grade. Once, Manuel asked her to come into a room to "help him get something"; he then pulled down her underwear and started to touch inside her "bottom" with his hands. Also, when Manuel would take L.M. to school in his van "every day," he would "pull [her] pants" down and put his fingers inside her "bottom." L.M. testified that, one time, when she was in the van with her parents and her sister, Manuel was "tickling" her stomach over her clothes "and then he would go to . . . my bottom and when he got there and my mom would say to stop, but he didn't stop." L.M. agreed that, by "bottom," she meant the area she had circled on the diagram. She stated Manuel told her not to tell anyone about the abuse.

L.M. testified that she initially told appellant that nothing happened, but she later informed appellant about the abuse when she was "[p]robably in the second or third" grade. Later, L.M. testified that she told appellant about the abuse in "first or second" grade. According to L.M., appellant "was asking me if he touched me, but I was saying no. That time I was playing with my friends and I was saying no, and then at the end, I said yes." L.M. stated that Manuel's abuse stopped when she was in the third grade "[b]ecause [appellant] told him to stop." She agreed that Manuel would continue to "try to touch" her when she was in fourth grade, but she "would say no" and he would refrain.

Toward the end of fifth grade, L.M. became concerned that the abuse would resume "[b]ecause he would tell me he would do it again." L.M. stated she told appellant this, and appellant told her not to inform her sisters. The following colloquy then occurred:

3

Q. [Prosecutor]     What did your mother say, [L.M.]?

A. [L.M.]     That he would have to give her money.

Q.     To do what?

A.     She didn't use those words, but she said that . . . he would have to give her money for the food, and because he was doing—he was telling her he was going to do it.

Q.     So money for the food, and money to touch you?

A.     She didn't use those words.

Q.     Okay. Can you try to remember as best as you can her words?

A.     She said that he would have to give her money, because—so she could buy food, and then I told her and she said that she [sic] would have to give her money because I told her that.

Q.     How did that make you feel?

A.     I don't know.

Soon after this, L.M. went to visit her sisters in Reynosa. At first, she did not tell them of Manuel's abuse because appellant told her not to. However, she later told her sister B.M., and B.M. contacted the police. L.M. later went to a hospital for a sexual assault examination and was interviewed at the Children's Advocacy Center.

On cross-examination, L.M. agreed that she was "giggling and laughing" during the "tickling" incident in Manuel's van and that, other than that incident, appellant was not "part of" any of Manuel's abusive acts. L.M. further agreed that appellant "didn't know what was present at the time of the touching" and did not know of Manuel's acts until L.M. told her about them. L.M. conceded that, once she told appellant about the abuse, "things kind of stop[ped] at least somewhat." She clarified that, though Manuel told her when she

was in fifth grade that he would touch her again, he did not actually do so because she "would tell him no" and "would go somewhere else where he wouldn't be." She stated that she did not tell appellant about the abuse until after going to the Children's Advocacy Center and being examined at the hospital. L.M. denied being angry at appellant for not calling the police.

On re-direct examination, L.M. reiterated that she told her mother about Manuel's abuse when she was in first or second grade, and the abuse stopped in "about third" grade. L.M. agreed with the prosecutor that Manuel continued to touch her even after she told appellant about the abuse.

## B. N.M.

L.M.'s sister N.M., nineteen years old at the time of trial, testified that in early 2016, she lived with her parents, L.M., and their brother. In the summer of 2016, she and L.M. went to visit her other sisters in Reynosa, but when it was time to leave, L.M. did not want to return to the apartment in Mission where Manuel lived.

Over defense counsel's objection, N.M. recounted an incident when she was five or six years old and living in Reynosa with her mother, sister, and grandmother. Once, when she was visiting Manuel in Mission with appellant, N.M. and her parents were in bed naked. N.M. stated that her parents locked the door and took off her clothes, and appellant told her "to rub [Manuel's] penis." According to N.M., she "masturbated" Manuel at appellant's direction. N.M. also stated that Manuel asked her to put his penis in her mouth, and she did so while appellant grabbed his testicles.

N.M. also recounted that, when she was around the same age, Manuel would touch her "boobs" underneath her clothes and put his fingers inside her vagina. This

5

happened "[m]ore than one time." When she was in sixth grade, "he tried to do it again," but N.M. "[did not] let him." N.M. stated appellant knew about the touching "[b]ecause she was there sometimes," but appellant did not call the police. The last time this happened was when N.M. was in fourth grade. On cross-examination, N.M. conceded that she did not tell anyone other than appellant about the abuse.

## C.    B.M.

B.M., L.M.'s older sister who lives in Mexico, testified through a translator that she was twenty-seven years old at the time of trial. She stated that Manuel began abusing her at night starting when she was six or seven years old: "[H]e would take off my clothes, start to touch me or want me to touch him or he would ask me to perform oral sex or he would perform oral sex on me or there was also penetration." This happened "almost daily" when the family was living in Mission. According to B.M., appellant was present for some of the abuse. B.M. stated appellant "would act like she was sleeping, but she was awake." On one occasion, appellant was pretending to be asleep when she "grabbed [B.M.'s] hands and made [her] touch him." B.M. agreed that she told her mother "specifically about what [Manuel] was doing to [her]," but appellant did "[n]othing." Appellant told B.M. "not to say anything and that everything I told her was not true."

While the family was in Reynosa the summer before trial, L.M. told B.M. she did not want to return to Manuel's house in Mission. Eventually, L.M. started to cry and told B.M. that Manuel had been touching her genitals with his hands. According to B.M., L.M. said she had told appellant about the abuse, but appellant told L.M. "to be quiet and not to say anything to anybody." B.M. also stated that "on one occasion, [L.M.] overheard that [appellant] was asking Manuel for money for food, and addition to that $100 for

6

touching [L.M.], and in the future, every time he touched her, it was going to be a $100." B.M. said she told appellant about L.M.'s outcry, but appellant continued to bring L.M. to Mission to see Manuel.

**D.    E.M.**

E.M., L.M.'s oldest sister, testified that Manuel also abused her when she was five or six years old.  She said he touched her breasts underneath her clothing and put his fingers in her vagina.  According to E.M., when she told appellant about this, appellant "said if I was good for things like that, then I was good for other things, other stuff.  So she then took out some of his clothes so I could wash it when I got back from school." On one occasion when E.M. was about ten years old, Manuel "tr[ied] to put his penis in [E.M.'s] mouth" but E.M.'s mouth was closed, so Manuel "slapped [appellant], and he said if I don't do that he's going to hit her."  E.M. recalled that, on another occasion, when she, her parents, and her brother were sitting on the bed, appellant "put her fingers into [E.M.'s] vagina and then Manuel put [E.M.'s brother's] fingers into [appellant's] vagina."

E.M. stated that the abuse continued until she was about thirteen years old. Around that time, when she was living in Mission, she told her teacher about the abuse and the teacher called appellant over to the school.  Appellant denied the allegations and took E.M. back to Manuel's house, but "[t]he suitcases were already packed and we returned to Reynosa."

Like B.M., E.M. conceded on cross-examination that she did not personally witness Manuel abuse L.M.  E.M. also stated that Manuel was "very violent," would drink a lot, and would beat appellant several times per week.  When asked whether appellant simply lacked the courage to confront Manuel, E.M. replied:  "Maybe she didn't have the courage,

7

but she had the opportunity to make him stop, because there were several times that they were separated, but yet, she could [sic] come back and look for him." E.M. stated that Manuel is currently in prison.

## E.     Custodial Statement

Investigator Edna Ochoa of the Hidalgo County Sheriff's Office testified that she and Investigator Noe Salazar went to Manuel's address on August 12, 2016, in an attempt to arrest Manuel pursuant to a warrant they had obtained. Manuel was not there, but the officers located appellant, and appellant voluntarily agreed to come to the sheriff's office. The officers both testified that appellant was not under arrest at the time. Salazar testified that, when appellant arrived at the sheriff's office, he

> was interrogating her or just going over the allegations about her daughters that they were making against her husband, and then from there, I also told her that I had a warrant for his arrest, and I told her that her daughter also made an outcry against her also. And then as I was talking to her, she just stayed quiet [f]or a few seconds, a few minutes and broke down crying and said that the allegations were all true.

Salazar testified he instructed Ochoa to give appellant her *Miranda* warnings, and appellant initialed and signed a form reiterating those warnings. Ochoa testified that appellant read the form and understood her rights. She denied that appellant was coerced or threatened into giving a statement, that appellant was deprived of any necessities, or that appellant appeared to be under the influence of alcohol or drugs.

Appellant gave a written statement in Spanish, which was translated into English and read to the jury. In the statement, appellant recounted that Manuel told her he touched E.M.'s breasts when the child was four years old. Appellant stated that Manuel also told her that he touched B.M.'s breasts. As to L.M., appellant stated: "[Six] years ago, I came to live with Manuel in the United States. On various occasions, Manuel would

8

touch [L.M.]'s breasts. Manuel told me to let him touch [L.M.]. I told Manuel to leave [L.M.] alone. I told Manuel to go look for women." Appellant further recounted that Manuel once "forced" her to have sexual intercourse with her son once, without protection, when she was forty-six years old and her son was sixteen years old. Appellant explained:

> Manuel would hit me a lot and would force me to do things that I didn't want to do. Everything that Manuel would say would have to be done his way if not he would not leave me alone. Manuel is very violent and controlling. I was afraid to report Manuel because I was afraid of him.

## F. Verdict

At the close of evidence, the trial court denied appellant's motion for directed verdict. The jury was instructed on the charged offense as well as the lesser-included offenses of aggravated sexual assault and indecency with a child. *See id.* §§ 21.11, 22.021. The jury was also instructed on the law of parties. *See id.* § 7.02. It found appellant guilty as charged, and the trial court sentenced her to thirty years' imprisonment and no fine. This appeal followed.

## II. DISCUSSION

### A. Motion for Directed Verdict

By her second issue, which we address first, appellant contends the trial court erred by denying her motion for directed verdict.

#### 1. Standard of Review

To determine whether the trial court erred in denying a defendant's motion for directed verdict, we assess whether the evidence was legally sufficient to support conviction. *See Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003). We consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a

9

reasonable doubt. *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In our analysis, we give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04. When the record supports conflicting inferences, we presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

### 2. Applicable Law

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* In this case, a hypothetically correct jury charge would instruct the jury to find appellant guilty of continuous sexual abuse of a young child if, from on or about September 1, 2009, to June 1, 2013: (1) appellant committed two or more acts of sexual abuse against L.M. during a period that is thirty or more days in duration; and (2) at the time of the commission of each of the acts of sexual abuse, appellant was seventeen years of age or older and L.M. was younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b).

10

In order to convict a defendant of continuous sexual abuse of a young child, the jury need not agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. *Id.* § 21.02(d). The jury must merely agree unanimously that the defendant, during a period that is thirty or more days in duration, committed two or more acts of sexual abuse. *Id.*

Consistent with the indictment, a correct charge would instruct the jury that "acts of sexual abuse" means: (1) indecency with a child by contact, if committed in a manner other than by touching, including touching through clothing, the breast of a child; or (2) aggravated sexual assault. *See id.* § 21.02(c)(2), (4). A person commits indecency with a child by contact if the person engages in sexual contact with a child or causes a child to engage in sexual contact. *Id.* § 21.11(a)(1). "Sexual contact," as alleged in the indictment, means any touching by a person, including through clothing, of the genitals of a child, with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c)(1). As alleged in the indictment, a person commits aggravated sexual assault if the person (1) intentionally or knowingly causes the penetration of the sexual organ of a child, and (2) the victim is younger than fourteen years of age. *Id.* § 22.021(a)(1)(B)(i), (a)(2)(B). A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

A hypothetically correct charge would additionally instruct the jury that, under the law of parties, appellant is criminally responsible for an offense committed by Manuel if: (1) "acting with intent to promote or assist the commission of the offense, [s]he solicit[ed],

11

encourage[d], direct[ed], aid[ed], or attempt[ed] to aid [Manuel] to commit the offense"; or (2) "having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission," she "fail[ed] to make a reasonable effort to prevent commission of the offense." *Id.* § 7.02(a)(2), (a)(3). Party participation may be shown by events occurring before, during, and after the commission of the offense, and may be demonstrated by actions showing an understanding and common design to do the prohibited act. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).

### 3. Analysis

There is no dispute that L.M. was under fourteen years of age, and appellant was over seventeen years of age, at the time of the events at issue. *See* TEX. PENAL CODE ANN. § 21.02(b)(2). There is also no dispute that Manuel committed multiple acts of sexual abuse against L.M. over a period of at least thirty days. *See id.* § 21.02(b)(1). The only question presented, therefore, is whether there was sufficient evidence to support appellant's conviction as a party to those offenses.

Appellant contends that there is no testimony that she encouraged, aided, promoted, assisted, or solicited Manuel to commit the acts of sexual abuse against L.M. *See id.* § 7.02(a)(2). She also argues that the State did not meet its burden in defining her "legal duty" under penal code § 7.02(a)(3). Finally, appellant contends that the State failed to show that she acted with intent to promote or assist the commission of these offenses, which is required for party participation under both § 7.02(a)(2) and § 7.02(a)(3).

In response, the State observes that L.M. testified she told appellant about Manuel's abuse and, instead of doing anything to stop or prevent it, appellant instead saw it as a way to extract money from Manuel. But L.M. testified that she was in the fifth grade

when appellant told Manuel "he would have to give her money," and L.M. recalled that the acts of abuse had stopped well before that time. Thus, this testimony in particular did not support a finding that appellant was a party to Manuel's acts of abuse against L.M.

Nevertheless, other testimony established that appellant was aware of Manuel's abusive acts as they were occurring. In particular, L.M. testified that Manuel abused her in his van, when he was taking her to school, in appellant's presence and over appellant's request to stop. L.M.'s testimony regarding precisely when she told her mother about Manuel's acts of abuse was inconsistent. At first, she testified that she told appellant when she was in second or third grade; later, she said she told her when she was in first or second grade. L.M. also gave equivocal testimony about whether or not Manuel's acts of abuse continued after she reported them to her mother—she initially agreed that the abuse "kind of stop[ped] at least somewhat" after she told appellant, but she later agreed that Manuel continued to touch her inappropriately even after she told appellant.

Although L.M.'s testimony was not always consistent, it nevertheless remains the exclusive province of the jury to weigh the evidence and evaluate the witnesses' credibility. *See Hooper*, 214 S.W.3d at 13. In other words, a jury may believe a witness even though the witness's testimony has been contradicted; it may accept any part of a witness's testimony and reject the rest. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Thus, the jury could have credited L.M.'s testimony that the abuse continued even after she told her mother.

The State further contends that the testimony of L.M.'s sisters provides support for a finding that appellant owed L.M. a legal duty to prevent Manuel's acts of abuse. *See* TEX. PENAL CODE ANN. § 7.02(a)(3). We agree that such a finding was supported. The

13

evidence in this case painted a disturbing picture of rampant sexual abuse committed by Manuel against each one of his four children over the course of many years, often in appellant's presence or with her active assistance and participation.  For example:

- N.M. stated that, when she was five or six years old, she "masturbated" Manuel and put Manuel's penis in her mouth at appellant's direction;

- N.M. stated that Manuel touched her breast and put his fingers in her vagina on multiple occasions and that appellant was present for some of this abuse;

- B.M. stated that Manuel abused her, including touching, oral sex, and penetration, beginning when she was six or seven years old, and appellant was present for some of the abuse;

- B.M. testified that appellant once forced her to touch Manuel's penis;

- B.M. stated that she told appellant specifically about Manuel's abuse, but appellant did nothing except to instruct B.M. not to tell anyone else;

- E.M. stated Manuel started abusing her when she was five or six years old, and she told appellant, but appellant did nothing to stop it, and appellant continued to return to Manuel and bring her children to live with him;

- E.M. stated that, on one occasion, appellant put her fingers in E.M.'s vagina and Manuel put her brother's fingers in appellant's vagina;

- appellant told police that Manuel said he touched E.M.'s breasts when she was four years old;

- appellant told police that Manuel told her to "let him touch" L.M.'s breasts, and that she told Manuel to "leave her alone" but he did not; and

14

- appellant further told police that Manuel forced her to have sexual intercourse with her son.

It is important to note that the indictment in this case alleged only continuous sexual abuse of L.M., not her siblings. Still, the overwhelming evidence showing that Manuel frequently sexually abused the other children, and that appellant was aware of and occasionally participated in the abuse, strongly supported a finding that appellant owed a duty to L.M. to prevent Manuel's abuse. *See id.* This evidence also supported a finding that the few actions appellant *did* take—such as telling Manuel to leave L.M. alone or merely asking him to stop—fell far short of a "reasonable effort to prevent" Manuel's abuse. *See id.*

Appellant complains that the State failed to provide any evidence of what appellant "should have done to prevent" the abuse. We disagree. Knowing that Manuel had sexually abused the other children, appellant could have simply declined to bring L.M. back to Manuel's residence in Mission where she was subject to further abuse. Moreover, the evidence showed that Manuel's abuse of L.M. stopped shortly after L.M. reported it to her older sisters and the sisters contacted police. A reasonable juror could rationally conclude from this evidence that, had appellant reported to police what she knew about Manuel's abuse when she knew it, much or all of the later abuse could have been avoided. At the very least, appellant could have refrained from instructing the children not to report the abuse.

Finally, the evidence established that appellant acted with the intent to promote or assist Manuel's abuse. Intent may generally be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45,

15

50 (Tex. Crim. App. 2004). Appellant notes that, according to B.M.'s testimony and appellant's statement to police, Manuel regularly beat appellant, and appellant stated she failed to report his crimes because she was afraid of him. But the jury was entitled to disbelieve this testimony. *See Hooper*, 214 S.W.3d at 13. In any event, the testimony of L.M.'s sisters, as outlined above, showed that appellant was repeatedly made aware of Manuel's actions and occasionally participated in them herself. In particular, according to B.M., appellant told L.M. not to tell anyone about Manuel's abuse. The jury could have rationally inferred from this evidence that appellant intended to promote or assist Manuel's acts of sexual abuse against L.M.

We conclude that the evidence was sufficient to support appellant's conviction as a party to the offense under penal code § 7.02(a). *See Bleil v. State*, 496 S.W.3d 194, 203 (Tex. App.—Fort Worth 2016, pet. ref'd) (holding evidence sufficient to support appellant's conviction as a party to continuous sexual abuse of a child where appellant, in exchange for drugs, repeatedly allowed her daughter to be taken to her drug dealer's house to be sexually assaulted, even though the daughter told appellant that no abuse occurred); *see also Olivarez v. State*, No. 13-18-00374-CR, 2019 WL 4866039, at *4 (Tex. App.—Corpus Christi–Edinburg Oct. 3, 2019, no pet. h.) (mem. op., not designated for publication) (same where appellant knew about her boyfriend's sexual abuse of her daughters, the abuse sometimes occurred in front of appellant, and appellant "prevented her daughters from talking to police"); *Cearley v. State*, No. 04-18-00483-CR, 2019 WL 3209419, at *4 (Tex. App.—San Antonio July 17, 2019, no pet.) (mem. op., not designated for publication) (same where appellant was aware that her boyfriend was sexually abusing her daughter but failed to contact authorities, told her daughter that she "just gave up

16

trying to prevent the abuse," and admitted that she drugged her daughter to make her sleep while the abuse occurred); *Noria v. State*, No. 06-18-00005-CR, 2018 WL 5289224, at *4 (Tex. App.—Texarkana Oct. 25, 2018, pet. ref'd) (mem. op., not designated for publication) (same where appellant brought her son to her co-worker's house without his siblings, helped bind her son to a bed so that the co-worker could sexually assault him, and ignored her son when he attempted to tell her about the assault).  Appellant's second issue is overruled.

## B.    Lesser-Included Offense

By her fourth issue, appellant argues that the trial court erred by denying her request, made at the charge conference, for a jury instruction on the lesser-included offense of failing to report a felony.  A person commits that offense, a Class A misdemeanor, if the person:

> (1)    observes the commission of a felony under circumstances in which a reasonable person would believe that an offense had been committed in which serious bodily injury or death may have resulted; and
>
> (2)    fails to immediately report the commission of the offense to a peace officer or law enforcement agency under circumstances in which:
>
>> (A)    a reasonable person would believe that the commission of the offense had not been reported; and
>>
>> (B)    the person could immediately report the commission of the offense without placing himself or herself in danger of suffering serious bodily injury or death.

TEX. PENAL CODE ANN. § 38.171(a).  "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  *Id.* § 1.07(a)(46).

17

Courts use a two-pronged test to determine whether a defendant is entitled to a jury charge instruction on a lesser-included offense. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). The first step of the analysis asks the purely legal question of whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Bullock*, 509 S.W.3d at 924; *see* Tex. Code Crim. Proc. Ann. art. 37.09.[2] If that prong is satisfied, the second step is to determine whether "there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *See Bullock*, 509 S.W.3d at 924; *Hall*, 225 S.W.3d at 528.

Appellant does not address the two-pronged test in her brief. As the State notes, however, the offense of failure to report a felony requires proof of at least one essential element that is not required for the offense of continuous sexual abuse of a child. In particular, to convict under penal code § 38.171, it must be shown that the accused observed a felony "under circumstances in which a reasonable person would believe that an offense had been committed in which serious bodily injury or death may have

---

[2] Under code of criminal procedure article 37.09, an offense is a lesser-included offense if:

(1)     it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2)     it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3)     it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4)     it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09.

resulted . . . ." TEX. PENAL CODE ANN. § 38.171(a)(1). That was not required for conviction under penal code § 21.02, as charged in the indictment here. *See id.* § 21.02; *see also Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (noting that, in considering the first prong in the lesser-included offense analysis, "[w]e must compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense"). Thus, failure to report a felony is not a lesser-included offense of continuous sexual abuse of a child.

Even if it was, there was no evidence from which the jury could conclude that, if appellant is guilty, she is guilty only of failing to report a felony. *See Bullock*, 509 S.W.3d at 924. Specifically, there was no support for a finding that a reasonable person would have believed that L.M. may have suffered "serious bodily injury or death" as a result of Manuel's acts of abuse which appellant observed. The nurse that examined L.M. testified that there were no signs of trauma and that genital areas heal rapidly. Manuel's acts of abuse were surely destructive and heinous, and they likely caused incalculable psychological harm, but no reasonable person could believe that they may have "created a substantial risk of death . . . , serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *See* TEX. PENAL CODE ANN. § 1.07(a)(46).

We overrule appellant's fourth issue.

## C.    Admission of Evidence

Appellant's remaining issues challenge the trial court's admission of evidence. We review such rulings for abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex.

19

Crim. App. 2016). A trial judge abuses its discretion if its decision falls outside the zone of reasonable disagreement. *Id.*

### 1. Extraneous Sexual Abuse

By his first issue, appellant challenges the trial court's admission of the testimony of L.M.'s sisters N.M., B.M., and E.M., about acts of sexual abuse committed by Manuel against them. Appellant argues that their testimony was unfairly prejudicial and confusing and therefore should have been excluded under Texas Rule of Evidence 403.[3] The State does not dispute that the Rule 403 issue has been preserved for our review.

We observe that, at trial, defense counsel never specifically referenced Rule 403, but counsel did object to the testimony of N.M. and B.M. on the basis that it its prejudicial effect outweighed its probative value. *See* TEX. R. APP. P. 33.1(a). The trial court overruled those objections. However, appellant directs us to no location in the record, and we find none, wherein her counsel made a Rule 403 objection to E.M.'s testimony.[4]

---

[3] In their discussion of this issue, the parties refer to Texas Rule of Evidence 404, which states that, though evidence of a person's prior bad act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404. However, in a prosecution for continuous sexual abuse of a young child, Rule 404 does not apply to evidence that the defendant has committed a separate sexual offense—even if that separate offense is against a victim other than the complainant—provided that, as here, the trial court determines in a hearing outside the presence of the jury that the evidence is adequate to support a finding beyond a reasonable doubt that the defendant committed the separate offense. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (stating that, "[n]otwithstanding Rule[] 404," evidence that the defendant has committed a separate sexual offense "may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant"). Appellant does not dispute that L.M.'s sisters' testimony satisfied article 38.37, § 2(b).

[4] Although no Rule 403 objection to E.M.'s testimony appears in the record, the trial court held a hearing outside the presence of the jury at the beginning of E.M.'s testimony. Afterward, the trial court held that certain testimony of E.M.—in particular, testimony that Manuel had engaged in sexual intercourse with her—was inadmissible because it was substantially more prejudicial than probative. *See* TEX. R. EVID. 403. The trial court stated that it was "going to overrule all the other objections."

We assume but do not decide for purposes of this opinion that appellant's Rule 403 issue has been preserved as to the testimony of all three of L.M.'s sisters.

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. When undertaking a Rule 403 analysis, a trial court must balance

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *see Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on reh'g); *Lopez v. State*, 288 S.W.3d 148, 156 (Tex. App.—Corpus Christi–Edinburg 2009, pet. ref'd). "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice." *Hammer v. State*, 296 S.W.3d 555, 568–69 (Tex. Crim. App. 2009). "The rule envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Id.* (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).[5] A trial court's decision on a Rule 403 objection is given "an especially high level of deference." *Robisheaux v. State*,

---

[5] Even if testimony is admissible under code of criminal procedure article 38.37, § 2(b), it may still be excluded under Rule 403 if a proper objection is made. *See Distefano v. State*, 532 S.W.3d 25, 37 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd) (citing *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007)).

Appellant first argues that, in admitting the sisters' testimony, the trial court failed to engage in the balancing test set forth in *Giglioblanco*. But Rule 403 does not require that the balancing test be performed on the record. *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.). And in overruling a Rule 403 objection, the trial court is assumed to have performed a Rule 403 balancing test and determined the evidence was admissible. *Id.*

Appellant next contends that it was an abuse of discretion for the trial court to determine, on balance, that the probative value of the sisters' testimony was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. She argues that the ultimate issue in the case—i.e., whether appellant failed to make a reasonable effort to prevent Manuel from abusing L.M.—was hotly disputed. She contends that the evidence of Manuel's abuse of N.M., B.M., and E.M. "confused the jury as to the issues, [was] inflammatory, did not provide evidence as to the ultimate issue, and [was] unfairly prejudicial."

"Unfair prejudice" refers to a "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641. "[C]onfusion of the issues" refers to "a tendency to confuse or distract the jury from the main issues in the case." *Id.*

22

To evaluate this issue, we examine the factors set forth in *Giglioblanco*. First, the sisters' testimony was inherently probative in that it showed that appellant's indifference toward Manuel's sexual aggression against the children was longstanding—it predated the incidents regarding L.M. and was not isolated to those incidents. L.M.'s sisters testified that appellant was present for some of Manuel's abuse and that they told appellant about Manuel's abuse, but appellant was unwilling or unable to stop it. This is relevant to the elements of the charged offense because it tended to establish that appellant had a legal duty to prevent Manuel's acts of abuse against L.M., and it tended to establish that she failed to make a reasonable effort to prevent those acts. *See* TEX. PENAL CODE ANN. § 7.02(a)(3). The testimony additionally showed that it was in appellant's character to tolerate or even assist Manuel's abuse; thus, it assisted the jury in determining whether she acted in conformity with her character by failing to stop Manuel's abuse of L.M. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (providing that, in a prosecution under penal code § 21.02, evidence that the defendant has committed a separate sexual offense "may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant"). Finally, because N.M., B.M., and E.M. were the only witnesses to the abuse they suffered—other than Manuel himself and occasionally appellant—the State demonstrated that it reasonably needed this testimony to establish the existence of a legal duty under penal code § 7.02(a)(3).

On the other hand, the testimony of N.M., B.M., and E.M. was inherently inflammatory. *Montgomery*, 810 S.W.2d at 387 ("Both sexually related misconduct and misconduct involving children are inherently inflammatory."). The events that these

23

witnesses testified to were morally reprehensible and criminal in nature. To the extent the jurors based their guilty verdict on any hostility arising from the nature of these acts themselves—rather than the effect these events had on the elements of party participation in the charged offense as set forth above—that would be improper. *See Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) ("It is now axiomatic that a defendant is to be tried only on the crimes alleged in the indictment and not for being a criminal generally.").

Still, evidence of a defendant's extraneous offense will always be prejudicial to the defendant. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). The question is whether the prejudicial effect of the testimony substantially outweighed its probative effect. TEX. R. EVID. 403; *see Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002) ("While evidence of an extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way, our rules of evidence require the exclusion of relevant evidence only if the danger of unfair prejudice, delay, or needless repetition substantially outweighs the probative value.").

Under these circumstances, giving a high level of deference to the trial court's decision, *Robisheaux*, 483 S.W.3d at 218, we cannot say that the trial court abused its discretion in overruling appellant's Rule 403 objections. *See Salazar v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) ("Because the evidence of prior sexual abuse of children was especially probative of Appellant's propensity to sexually assault children, the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children." (quotation omitted)); *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (holding that

24

evidence that appellant had sexually abused two other children was admissible under Rule 403 in part because it was "straightforward and directly relevant to the only issue in the case, namely whether [appellant] abused [complainant]").

Appellant's first issue is overruled.

## 2. Custodial Statement

By her third issue, appellant contends that the trial court erred by admitting evidence of the custodial statement she made to police. Appellant argues that the officers conducted a "two step custodial interrogation . . . without benefit of proper *Miranda* warnings." *See Martinez v. State*, 272 S.W.3d 615, 626 (Tex. Crim. App. 2008) ("If the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made. . . . [C]urative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver."); *see also Vasquez v. State*, 483 S.W.3d 550, 555 (Tex. Crim. App. 2016) ("The appropriate remedy when a two-step interrogation technique has been impermissibly employed is the suppression of both the unwarned and the warned statements.").

Defense counsel objected at trial to admission of the custodial statement on grounds that it was made involuntarily, but counsel did not object on grounds that the officers conducted a "two-step" interrogation under which they asked questions first and gave *Miranda* warnings later. The Texas Court of Criminal Appeals has held that a general objection based on voluntariness is not sufficiently specific to preserve error as to an alleged two-step interrogation technique. *See Vasquez*, 483 S.W.3d at 555

25

(applying TEX. R. APP. P. 33.1(a)). That is especially true when, as here, the evidence regarding the custodial statement was unclear in terms of timing and did not explicitly show that a "two-step" approach was used. *See id.* (observing that "[t]he trial court's response to appellant's argument and its ruling on appellant's motions to suppress indicate that it did not understand the nature of appellant's two-step interrogation complaint").

Even if the issue were preserved and we found error, appellant has not established that the trial court's decision to admit the custodial statement was harmful to her. The admission of incriminating statements made during a custodial interrogation where no proper *Miranda* warnings were given constitutes constitutional error, which is considered harmful unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See* TEX. R. APP. P. 44.2(a); *Akins v. State*, 202 S.W.3d 879, 891–92 (Tex. App.—Fort Worth 2006, pet. ref'd). If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001).

The custodial statement was not central to the State's case against appellant. In the statement, appellant recounted that Manuel touched B.M., L.M., and E.M. inappropriately. However, appellant stated that, when she found out about the abuse of L.M., she told Manuel to leave L.M. alone. She did not admit that she allowed or assisted Manuel to continue the abuse. The bulk of the evidence regarding appellant's complicity in Manuel's acts of abuse instead came from the child victims. Appellant also stated that she did not report Manuel because she was afraid of him—this was probative as to whether she made a reasonable effort to stop him. *See* TEX. PENAL CODE ANN.

26

§ 7.02(a)(3). But Manuel's physical violence with appellant was already established by E.M.'s testimony. Accordingly, there is no reasonable likelihood that the statement materially affected the jury's deliberations. We conclude beyond a reasonable doubt that the admission of appellant's custodial statement did not contribute to the verdict. *See* TEX. R. APP. P. 44.2(a). We overrule appellant's third issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 19th
day of December, 2019.