# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00043-CR

**Mark Aaron Mason, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 20TH DISTRICT COURT OF MILAM COUNTY**
**NO. CR27,206, THE HONORABLE JOHN YOUNGBLOOD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In five issues, appellant Mark Aaron Mason challenges his conviction for continuous sexual abuse of a child.  *See* Tex. Penal Code § 21.02(b).  He contends that: (1) the trial court erred by denying his motion to suppress the evidence obtained from the seizure of his electronic devices; (2) the trial court erred by overruling his hearsay objection to his co-defendant's statement about the offense to police and his Confrontation Clause objection to the evidence admitted of his co-defendant's plea agreement and judicial confession to the offense; (3) the trial court erred when it determined that the forensic interviewer and not the victim's mother was the proper outcry witness; (4) the jury charge application paragraph explaining the thirty-day duration element was erroneous and caused egregious harm; and (5) the evidence was legally insufficient to support the jury's determination that two offenses of child abuse occurred during a period of thirty days or more.  We affirm.

## BACKGROUND

Mason was indicted for continuous sexual abuse of his son Greg,[1] who was eight years old when he made his outcry against Mason and Pam Maret, who was Mason's wife and Greg's stepmother.

Detective Oscar Lopez testified that he became involved in the case when he was contacted by a Child Protective Services (CPS) investigator who was calling from the Children's Advocacy Center of Central Texas after witnessing Greg's forensic interview. The next day, Lopez and a special investigator with CPS reviewed the forensic interview. After reviewing the entire interview, Detective Lopez drafted affidavits for arrest warrants for Mason and Maret, and for search warrants of their home.

Detective Lopez testified that he placed both Mason and Maret in custody and advised them that there were warrants for their arrest for the offense of continuous sexual abuse of a young child. Detective Lopez testified, over defense counsel's hearsay objection that Maret told him that the allegations were true, that she had "been having sexual relationships with [Greg], that [Mason] was present, that [Mason] was the one who put her up to it," "that everything that [Greg] had said was accurate," and "there was a couple of times where Mr. Mason had performed oral sex on [Greg] himself." Maret also told Detective Lopez "about how [Mason] would make her have sex with other people and that when she would protest about things that he said that . . . she needed to do this for about six months or so" and "if she didn't do this[,] he would never marry her."[2]

---

[1] Because Mason's children are minors or were at the time of the abuse, we will refer to them by pseudonyms to protect their privacy. *See* Tex. R. App. P. 9.10(a)(3).

[2] Specifically, Detective Lopez testified to the following:

Detective Lopez also testified about his search of Mason and Maret's home. He testified that the search warrant was for "any kind of paper documents, electronics, or anything that might be linked to child pornography." Detective Lopez explained that although "numerous" electronic devices were seized from the home, he could only submit two items to the lab because it was "the peak of COVID," and the protocols at that time limited him to submitting the "two items of most probative value," which he determined to be Mason's personal computer and his cell phone. The evidence obtained from the two electronic devices was the subject of a motion to suppress based on an allegedly insufficient search warrant, which was denied by the trial court.

Detective Lopez also testified about interviewing Karen Mason (Karen), Mason's ex-wife and Greg's mother. Over defense counsel's hearsay and Confrontation Clause objections, Detective Lopez testified that Karen told him that she and Mason had sexually abused her oldest son, Terry, when he was a child. Terry was an adult at the time of Greg's outcry.

An outcry hearing was held outside the presence of the jury. Karen and forensic interviewer Ashley Lomas were called as witnesses. Lomas testified that Greg told her that

---

So eventually she proceeded to tell me that the allegations that I had brought to her attention were true, that she had, in fact, been having sexual relationships with [Greg], that [Mason] was present, that [Mason] was the one who put her up to it, that she depended completely on [Mason]. She left her job and career to come and live with [Mason], and be, you know, a stepmother to the children and that she was completely dependent on him. She told [Detective Lopez] about how [Mason] would make her have sex with other people and that when she would protest about things that he said that, you know, she needed to do this for about six months or so, I believe that's correct, and that she if she didn't do this he would never marry her. But she admitted that everything that [Greg] had said was accurate and even went on to have—there was a couple of times where Mr. Mason had performed oral sex on [Greg] himself.

3

during the summer either before or after he was in first grade and through third grade, Mason and Maret made him do "sex things" about ten times, which included Mason having Greg "suck on his private parts" twice, and Maret putting her mouth on Greg's private part and making Greg put his private part in her private part. Karen testified that after she observed Greg being jumpy and unhappy, she asked him what was going on to make him unhappy. He told her that Mason and Maret asked him to have sex with them. Karen testified that her experience as a teacher led her to stop the conversation there and get him to a neutral counselor because she did not want to "taint" his outcry. The trial court determined that Lomas was the proper outcry witness to testify about Greg's statements. Defense counsel obtained a running objection against any of her hearsay statements based on the ground that she was not the correct outcry witness.

Lomas testified in front of the jury that during a forensic interview, Greg told her that he was there to "talk about sexual things that happened at [his] dad's house." He told her that his dad and stepmom were "doing sexual things around him and to him," which Greg explained to Lomas included Mason asking Greg to suck on Mason's "private part" on two occasions, Maret putting her mouth on Greg's "private part" about ten times, and Mason and Maret making Greg put his "private parts" inside of Maret's "private parts." Lomas testified that Greg made hand gestures and used body positioning to demonstrate that his and Maret's legs were "spread open" during the acts he was describing to her. Lomas also testified that although Greg could not tell her his birthday, he kept telling her that he was "eight, almost nine." The recording of the forensic interview was admitted over defense counsel's hearsay objection but was not played for the jury due to technical issues.

Although Maret was subpoenaed by the State, she did not appear at Mason's trial and, a writ of attachment was ordered by the trial court at the request of the State.

4

Greg, who was ten-years old at the time of trial, testified that he met Maret when he was seven years old and in the first grade. He explained that "private parts" means "the stuff you use to go the bathroom." When asked to point to his "private parts," he pointed to his "groin area," which the State and the trial court noted for the record. Greg explained that "sex" means "[w]hen one thing goes into someone else's thing," and that Maret's "thing" and his "thing" are different. Greg testified that Maret had sex with him more times than he could count while his father was on the bed with them.

The State offered and the trial court admitted, over Mason's Confrontation Clause objection, Maret's plea agreement, plea of guilty, and judicial confession.

Kristina Heegstrom testified that she is the forensic scientist that analyzed Mason's computer and cellphone. Mason requested, and was granted, a running objection "on the admission of any product of computers based on [his] previously filed and ruled on motion to suppress." Heegstrom testified that the name of the computer's user was Mason's. She testified that she reviewed the search history, website bookmarks, videos, and images on the computer. She testified to the titles of the pages viewed in the search history, which had names suggesting that they contained videos of child pornography. She testified that she also reviewed the saved searches in one of the web browsers, which she explained meant that the user had typed in certain words to a search bar and the web browser had saved it to autofill for later searches. She testified to what two of the saved searches were, both of which suggested they were searches for child pornography. She also testified that there were nine videos and photographs that were on the computer that she flagged as possibly containing child pornography. She explained that based on the limits of her expertise she could not state that the videos contained child pornography but that she had been concerned by the contents of the videos and reported them to

the proper agency for further investigation. She testified to the names of the videos and photos that she had flagged as possible child pornography, many of which suggested from the title that they contained child pornography. On cross-examination, Heegstrom agreed that although the username associated with the computer was Mason's, she could not determine that he was the only one accessing the computer and that anyone could have set up the user profile using his name. Over Mason's objection, the trial court admitted an exhibit containing still shots from the videos that Heegstrom testified she suspected as being child pornography.

Karen testified that she and Mason had three children together: twenty-four-year-old Terry, eleven-year-old Greg,[3] and a seven-year-old son. She testified that she talked to Greg after he started acting differently, which she described as sad, withdrawn, and more self-conscious. As a result of that talk, she took him to a counselor and eventually a report was made to law enforcement, and Greg was interviewed by a forensic interviewer.

Karen also testified that while speaking to Detective Lopez regarding Greg, she had admitted that she and Mason had together abused Terry when he was a child in a similar manner to Greg's outcry made during the forensic interview. She testified that she had since been charged with aggravated sexual assault of a minor, that a CPS case had been opened, that she did not have custody of Greg or her youngest son, and that her parental rights had been terminated. She testified that she had not faced any charges prior to talking to Detective Lopez about what happened to Terry, that her charges were pending in a different county, and that she had not been promised anything in exchange for her testimony in this case. Karen testified that

---

[3] Greg testified at trial that he was ten years old and would be turning eleven later that month.

Mason had convinced her "to have sex with" Terry and that Mason repeated this behavior against Greg.

On cross-examination, Karen agreed that in March of 2020 she made a report to CPS that CPS took no action on, that Mason filed a petition to modify custody in June of 2020, and that she noticed Greg's mood changes in August of 2020. She admitted that she signed a plea agreement for her charged offense against Terry in May of 2022, but as of the time of the trial in January of 2023, she had not yet pleaded guilty. She agreed that the prosecutors and the judge knew she was testifying in this case. She was also asked about medical issues that Greg had been experiencing for about two years preceding his outcry. She agreed that as a result of a medical condition, Greg experienced pain when his foreskin was touched and eventually had circumcision surgery to remedy the issue soon before his outcry.

Terry, Mason's oldest child, testified that "from the time [he] was in kindergarten up until about sixth grade[, he] was mentally, physically and sexually abused by [his] father in multiple different ways." He testified that his mother was involved in the abuse from when he was in kindergarten to first grade and that his father would "be in the room and be egging it on and have her perform oral sex on [Terry]." He testified that Mason would make him have sex with his mother, including using sex toys, while Mason watched and masturbated. He testified that Mason recorded the sexual abuse and posted it online. He testified that he did not report the abuse against him to the police until after Greg had made his outcry because Terry had hoped that Mason had changed but realized that Mason had not after finding out what happened to Greg. He testified that because of his experience with sexual abuse he knew what to look for and he recognized some of Greg's behaviors based on his own experiences.

7

On cross-examination, Terry admitted that although he had given a statement, been deposed under oath, and given testimony under oath at a previous hearing, he had not mentioned sex toys or a webcam being involved in the abuse prior to his testimony in this case. He testified that both his parents were petty and would make things up against each other to report to CPS. He referred to his mother as "not the most reputable source" and stated that the divorce between his parents was "nasty."

Deborah Pena testified that she was one of Terry's youth leaders at the church he attended when he was about fifteen to seventeen. She testified that Terry told her and her husband at that time that he had been abused by his father, including that his father made him have sex with his mother. She did not report the abuse because Terry asked her not to and she was not certain that it was happening to the other children.

Mason did not call any witnesses, but the trial court admitted his sole exhibit, which was work records of times he was and was not working. On the State's request, Mason agreed to stipulate that he worked from home.

No objections were made to the court's charge. After hearing all the evidence, the jury returned a guilty verdict. After the jury notified the trial court it had a verdict and before the jury was brought in, the State put it on the record that the jury had not watched the forensic interview during deliberations because they were not provided with anything to play the recording on.[4] The State did not present any new evidence in the punishment phase. Mason called three friends and his mother to testify on his behalf. The jury assessed punishment at life imprisonment and a ten thousand dollar fine, and the trial court sentenced Mason to the assessed punishment. Mason appealed.

---

[4] The video of the forensic interview is not part of the appellate record.

## DISCUSSION

**Legal Sufficiency**

In his fifth issue, Mason contends that the evidence was legally insufficient to prove that he committed two or more acts of sexual abuse during a time period of thirty days or more in duration. Because this issue could result "in greater relief than his other issue[s]," we address it first. *See Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

When reviewing the sufficiency of the evidence in a criminal case, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In making this determination, we "consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* We must presume the factfinder resolved conflicting inferences in favor of the conviction. *See Jackson*, 443 U.S. at 326. We must also consider the combined and cumulative force of all the inculpatory evidence and reasonable inferences drawn therefrom and be careful not to engage in a "divide and conquer" or "thirteenth juror" analysis. *See Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex Crim. App. 2007).

"Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th

9

Dist.] 2006, pet. ref'd).  The jury may not "come to conclusions based on mere speculation or factually unsupported inferences."  *Hooper*, 214 S.W.3d at 15.  "An inference is a conclusion reached by considering other facts and deducing a logical consequence from them[,]" and "[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented."  *Id.* at 16.

Under the Penal Code, a person commits the offense of continuous sexual abuse of a child if the following occurs:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
>
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:
>
>> (A) a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense . . . .

Tex. Penal Code § 21.02(b).

In the context of continuous sexual abuse of a child, the "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed," but "[t]he jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."  *Id.* § 21.02(d).  The testimony of a child victim alone can be sufficient to support a conviction for continuous sexual abuse of a child.  *See* Tex. Code Crim. Proc. art. 38.07(a).

Mason contends that no evidence was presented to the jury that the alleged acts of sexual abuse occurred during a time period of 30 days or more. Specifically, he contends that the only evidence presented in support of the durational requirement is Greg's testimony that Maret had sex with him "more times than [he] can count," and Mason contends that the evidence shows that Mason "was not an active participant" in that abuse.

We first address the sufficiency of the evidence regarding Mason's participation in the abuse that involved Maret having sex with Greg. For purposes of the offense of continuous sexual assault of a young child, the Penal Code defines "act of sexual abuse" as any act in violation of one or more of several penal laws. Tex. Penal Code § 21.02(c). Relevant here, the definition includes Penal Code section 22.021, aggravated sexual assault of a child. *Id.* § 21.02(c)(4). The law of parties allows the State to enlarge a defendant's criminal responsibility to include acts in which he may not have been the principal actor. *Ryser v. State*, 453 S.W.3d 17, 28 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). A person can be convicted as a party even if the indictment does not explicitly charge him as a party. *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code § 7.01.

Here, the jury was instructed that:

> A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person. Mere presence alone will not constitute one as a party to the offense.

The first sentence of the instruction tracks the language of Texas Penal Code Section 7.02(a)(2).

11

Here, Greg testified that when Maret had sex with him, Mason was on the bed with him and Maret. Lomas testified that Greg told her that Mason and Maret made Greg put his "private parts" inside of Maret's "private parts." Detective Lopez testified that Maret told him that she had sex with Greg and that Mason "put her up to it," that she was dependent on Mason, and that he made her have sex with other people. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence presented at trial was sufficient to support a finding that Mason solicited, encouraged, directed, or aided in the sexual abuse of Greg that also involved Maret. *See Bleil v. State*, 496 S.W.3d 194, 203 (Tex. App.—Fort Worth 2016, pet. ref'd) (concluding evidence was sufficient to convict victim's mother of continuous sexual abuse of child under law of parties when evidence supported that mother had "made her daughter sexually available" to her drug dealer in exchange for home delivery of methamphetamine for several months).

Having concluded that the evidence was sufficient to support that Mason was a party to Maret's acts of abuse against Greg, we address the sufficiency of the durational element.[5] As our sister court has explained, "[a]lthough the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that the last act of sexual abuse occur on at least the 29th day after the day of the first act." *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (finding evidence sufficient when victim testified that abuse occurred during summer of 2007 and continued until her twin siblings were two weeks old, which based on victim's mother's testimony of twins' birthdates

---

[5] Mason admits in his appellate brief that the testimony that Maret had sex with Greg "more times than [he] can count," supports the durational element for those instances of abuse committed by Maret but maintains that the evidence was insufficient to convict him based on those incidents of abuse.

12

would have been mid-December 2007). The Court of Criminal Appeals has cautioned that "courts cannot impose unrealistic expectations regarding proof of when an offense actually occurred," especially when the victim is a young child. *Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006). Our sister courts have determined that testimony regarding the durational requirement was sufficient to support the conviction for continuous sexual abuse when the victim described the abuse occurring over multiple seasons, *see Brown v. State*, 381 S.W.3d 565, 577 (Tex. App.—Eastland 2012, no pet.) (concluding evidence was sufficient to support conviction when victim testified that abuse occurred in summer and in between Thanksgiving and Christmas), when the victim provided "benchmarks" such as "during the summer months" and "continued during the following school year," *see Wishert v. State*, 654 S.W.3d 317, 329 (Tex. App.—Eastland 2022, pet. ref'd), and when another witness's testimony added a timeframe to match the victim's testimony, *see Garner v. State*, 523 S.W.3d 266, 272 (Tex. App.—Dallas 2017, no pet.) (concluding evidence was sufficient to support conviction when victim testified that abuse involved pillow she received for Christmas gift and her mother testified that she learned that abuse started around Christmas, and last day of abuse was day before child victim's outcry, which mother stated was mid-February); *Williams v. State*, 305 S.W.3d 886, 890 (Tex. App.—Texarkana 2010, no pet.) (concluding evidence was sufficient to support durational element when child victim testified that abuse occurred "more than once," and victim's mother testified that victim told her it happened, "just about every time" victim went to her grandmother's house, and mother testified that she took victim to stay with her grandmother "regularly" for five months).

Here, Greg testified that Maret had sex with him "more times than [he] can count." Greg testified that he was ten years old at the time of trial. The jury heard from Greg's

mother that she and Mason shared custody of Greg during the time the abuse occurred. The jury heard that Maret confessed that the allegations were true and during that confession she told Detective Lopez that Mason told her she had to have sex with other people for about six months. The jury could have reasonably inferred that Greg was one of those people that she had to have to sex with for six months. Terry testified that when he was a child he had been abused by Mason in a similar pattern, that the abuse lasted years, and that he recognized some of Greg's behaviors based on his experience of being abused by Mason. Greg's mother testified that she was involved in the abuse of Terry and that Mason had repeated that abuse with Greg. We conclude that the evidence was sufficient to support the jury's determination that Mason was a party to two or more acts of sexual abuse against Greg during a period of thirty or more days.

We overrule Mason's fifth issue.

**Sufficiency of the Search Warrant**

In his first issue, Mason contends that the search warrant for Mason's electronic devices was not supported by probable cause and lacked a nexus between the offense and the items to be seized.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location." *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). "A warrant-based search is presumptively reasonable, and it is the defendant's burden to prove that a search is unreasonable." *Adkins v. State*, 418 S.W.3d 856, 860 (Tex.

App.—Houston [14th. Dist.] 2013, pet. ref'd). This standard is flexible and non-demanding. *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022). We "must give great deference to a magistrate's probable cause determination, including a magistrate's implicit finding," to encourage police officers to obtain warrants. *Id.* "When in doubt, [we] should defer to all reasonable inferences that the magistrate could have made," *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013), even "in close cases," *Duarte*, 389 S.W.3d at 354. Accordingly, "[t]he test is whether the trial court had a substantial basis for concluding the search would uncover evidence of wrongdoing." *Martinez v. State*, 660 S.W.3d 179, 192 (Tex. App.—San Antonio 2022, pet. ref'd). Our review is limited to the "four corners" of the affidavit. *See Foreman v. State*, 613 S.W.3d 160, 164 (Tex. Crim. App. 2020). However, the magistrate is permitted to draw reasonable inferences from the facts within the affidavit. *Id.* We must avoid interpreting the affidavit in a hyper-technical, rather than a common-sense, manner. *See Bonds*, 403 S.W.3d at 873.

Here, the affidavit submitted by Detective Lopez requested a search warrant to be issued to enter Mason's home address and to

> seize and search electronic devices found within, including but not limited to: cellular telephones or other wireless communication devices (subject to Article 18.0215 CCP), computers, media storage devices or other electronic storage devices, DVDs, videotapes, and printed material in which pornographic images could be stored and or viewed and to subject items seized to forensic search and analysis for the purpose of extracting digital evidence constituting an offense.

The affidavit stated the date when, and location from which, Detective Lopez "received information from Child Protective Services that an outcry of sexual abuse was made by an eight-year-old male . . . alleging Continuous Sexual Abuse of a Young Child," and that "[b]ased on the forensic interview, probable cause was established for the issuance of felony

15

warrants . . . on the child victim's father and stepmother[.]" The affidavit also included the factual allegations that the address to be searched "is the residence of the child victim's father and stepmother"—and then identified them as Mason and Maret—and that "in the forensic interview, the child stated that in addition to the sexual abuse that was occurring he was shown videos of a sexual nature of teenagers and grown-ups having sex."

Thus, the affidavit included factual allegations that there was a child victim of sexual abuse who was shown pornographic videos by his father and stepmother and that the home to be searched was their residence. It is not unreasonable for the magistrate to have inferred that Mason would have used electronic devices in his own home to store the pornographic videos that he and his wife had shown to their child. *See Porath v. State*, 148 S.W.3d 402, 409 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting that in addition to search warrant affidavit including officer's opinion that individuals who find their victims online tend to use their home computers, "because appellant and the complainant met in an Internet chat room, it is not unreasonable for the magistrate to have inferred that appellant would use his home computer for the purpose of enticing children"). *Cf. United States v. Touset*, 890 F.3d 1227, 1235–36 (11th Cir. 2018) (noting that electronic devices are type of "property most often used to store and disseminate child pornography," and that "child pornography offenses overwhelmingly involve the use of electronic devices for the receipt, storage, and distribution of unlawful images").

Mason contends that the Court of Criminal Appeals' holding in *Baldwin* supports his contention that the affidavit was insufficient. *See* 664 S.W.3d at 134–35. Specifically, he contends that "the affidavit supporting the warrant in this case is weaker than the affidavit recently considered and rejected by the Court of Criminal Appeals in *State v. Baldwin*." We

disagree.  In *Baldwin*, the Court determined that the search warrant affidavit in a capital murder investigation was insufficient because while there were sufficient facts to connect the defendant's car to the crime, there were no facts that tied the defendant's cellphone, found inside the car, to the crime.  *Id.*  Specifically, the Court noted that the facts in the affidavit were limited to the fact that "neighbors saw a certain white sedan with a black driver circling their neighborhood the day before the offense occurred, a similar sedan was seen quickly leaving the neighborhood after the offense, and that Appellee, a black man, was driving the very same vehicle four days after the offense."  *Id.*  The Court noted that the required inference to tie the cellphone to the crime was that the defendant must have used his cellphone to coordinate with a co-defendant to commit murder, but there was no fact included in the affidavit to draw that inference from.  *Id.*

Mason contends that the holding in *Baldwin* required that the affidavit in this case include on which device and at what location the victim was shown pornography to be sufficient. We disagree.  Here, unlike in *Baldwin*, there is a nexus between the offense and the items to be searched.  The affidavit included information that the child alleged he was sexually abused and shown pornographic videos by his parents who reside at the address to be searched.  There was a nexus between the evidence sought—pornography used in the commission of child abuse—and the location to be searched—the home of the child victim's abusers who are his parents and electronic devices located in the home.

Considering the totality of the circumstances and giving the magistrate's determination of probable cause deference, we hold that the warrant satisfied the Fourth Amendment.  We overrule Mason's first issue.

17

**Evidentiary Rulings**

Mason's second issue contends that the trial court erred when it overruled his hearsay objections to Maret's statement to Lopez and his Confrontation Clause objection to Maret's plea agreement and judicial confession. Mason did not preserve error for his hearsay sub-issue, and the trial court's confrontation clause error was harmless.

*Hearsay objection*

Mason contends that Lopez's testimony as to what Maret told him about committing the offense and Mason's level of involvement included impermissible "blame shifting" hearsay statements that are not covered by the hearsay exception for statements against interest. *See* Tex. R. Evid. 803(24) (providing exception to general prohibition on hearsay for statements that are against declarant's interest). Lopez's testimony that was admitted over Mason's trial objection, with the portions he contends on appeal are not covered by the hearsay exception appearing in italics, is as follows:

> So eventually [Maret] proceeded to tell me that the allegations that I had brought to her attention were true, that she had, in fact, been having sexual relationships with [Greg], that [Mason] was present, *that [Mason] was the one who put her up to it, that she depended completely on [Mason]. She left her job and career to come and live with [Mason], and be, you know, a stepmother to the children and that she was completely dependent on him. She told me about how [Mason] would make her have sex with other people and that when she would protest about things that he said that, you know, she needed to do this for about six months or so*, I believe that's correct, *and that she if she didn't do this he would never marry her.* But she admitted that everything that [Greg] had said was accurate and even went on to have—*there was a couple of times where [Mason] had performed oral sex on [Greg] himself.*

Immediately before Lopez's quoted answer, the following exchange took place:

> [State] Did you ever begin to ask Pam Maret about whether or not she had had sexual contact with [Greg]?

18

[Lopez] I did.

[State] And what was her response?

[Defense Counsel] Objection, hearsay, Your Honor.

[State] Your Honor, this is a statement against Ms. Pam Maret. The declarant makes a statement that exposes her to criminal liability and is admissible under [Rule 803(24)].

[Trial Court] Overrule the objection.

[State] How did Pam Maret respond?

Mason does not challenge the first part of Detective Lopez's answer, which directly answered the question and was limited to what Maret said about "whether or not she had had sexual contact with [Greg]." Rather, Mason complains on appeal about portions of the testimony based on his contention that they crossed the line from being against Maret's interest and were against Mason's interest. *See Guidry v. State*, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999) (explaining that generally hearsay exception for statement against one's own interest does not apply when statement is against someone else's interest, such as third parties or co-defendants); *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008) (explaining difference between admissible blame-sharing statements and inadmissible blame-shifting statements and holding that "'blame-shifting' statements that did not inculpate the speaker and the defendant equally were inadmissible under the [hearsay] rule").

To preserve error for appellate review, a party must present a timely complaint to the trial court stating the specific grounds for the desired ruling "with sufficient specificity to make the trial court aware of the complaint" if they are not apparent from the context of the

complaint. *See* Tex. R. App. P. 33.1(a)(1)(A). Further, the objection made at trial must comport with the issue raised on appeal to be preserved for review. *Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005). Generally, in order to preserve error, a party must continue to object each time inadmissible evidence is offered, unless the party obtains a running objection or requests a hearing outside the presence of the jury. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). A court of appeals should not address the merits of an issue if it has not been preserved for appeal. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

Here, the question asked by the State was focused on Maret's involvement. The trial court overruled the general hearsay objection made based on the question asked. When the answer continued outside of that scope and began to discuss Mason's involvement, no further objection was made.

Mason contends that the holding in *Walter v. State* required the trial court to sua sponte excuse the jury members to hear Detective Lopez's testimony outside of their presence and to parse the statements for those that were blame-sharing versus blame-shifting. *See* 267 S.W.3d at 900. However, *Walter* does not require a trial court to sua sponte hold a hearing. Rather, the Court of Criminal Appeals explained in *Walter* the proper standard for determining whether a statement is admissible under Rule 803(24), which in that case was presented to the trial court during a hearing outside the presence of the jury. *Id.* Here, Mason did not request a hearing outside the presence of the jury, and none was held. *See* Tex. R Evid. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.").

We conclude that the portion of his second issue challenging the hearsay testimony was not preserved for appellate review.

20

*Confrontation Clause Objection*

Also in his second issue, Mason contends that the trial court erred when it admitted into evidence Maret's guilty-plea agreement, waiver, stipulation, and judicial confession over his Confrontation Clause objection. *See Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) (holding that Confrontation Clause bars admission of out-of-court testimonial statements of witnesses unless witness is unavailable to testify, and defendant had prior opportunity to cross-examine witness). We review a trial court's evidentiary ruling on a Confrontation Clause objection de novo. *See Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011).

Here, trial counsel objected specifically on *Crawford* grounds. The State argued that the exhibits were not testimonial, and the trial court overruled the objection. *Crawford* itself referenced "plea allocations" as "plainly testimonial statements." *Id.* at 64. Further, the Court of Criminal Appeals has recognized that the United States Supreme Court has identified three types of out-of-court statements that fall within the category of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," (2) "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Because Maret's judicial confession includes testimonial statements and the record includes no evidence that Mason had a prior opportunity to cross-examine her, the trial court erred in overruling the objection.

21

Confrontation Clause error is subject to a constitutional harm analysis. *Id.* at 582. Under this analysis, a reviewing court must reverse unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Chapman v. California,* 386 U.S. 18, 24 (1967). "If there is a reasonable likelihood that the error materially affected the jury's deliberations, the error was not harmless." *Jones v. State,* 119 S.W.3d 766, 777 (Tex. Crim. App. 2003). Thus, we must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Neal v. State,* 256 S.W.3d 264, 284 (Tex. Crim. App. 2008). The emphasis of this analysis should not be on whether the jury verdict was supported by the evidence, but instead on "the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected the integrity of the process leading to the conviction." *Langham*, 305 S.W.3d at 582.

Factors relevant in determining whether Confrontation Clause error is harmless include (1) the importance of the out-of-court statement to the State's case, (2) whether the out-of-court statement was cumulative of other evidence, (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points, and (4) the overall strength of the State's case. *Id.* We may also consider "the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence" compared to the balance of the evidence as a whole regarding the relevant element or defensive issue. *See id.*

Here, the evidence of Maret's judicial confession was not significantly important to the State's case. It was cumulative of Detective Lopez's testimony of Maret's confession made to him. The defense did not contradict that Maret was guilty of assaulting Greg, but rather

22

defense counsel argued to the jury that the State was attempting to have the jurors find Mason guilty of a crime Maret committed and referenced her guilty plea. Notably, Maret's guilty plea and judicial confession did not mention Mason. The strength of the State's case was supported by Greg's testimony about the abuse that Mason and Maret committed against him together, Karen's testimony that Mason repeated what he did to Terry with Greg, Terry's testimony of what Mason did to him, which was very similar to Greg's allegations, and the forensic interviewer's testimony about Greg's outcry. Although the State did emphasize Maret's guilty plea in its closing arguments, it also argued to the jury that it could convict Mason on Greg's testimony alone.

We conclude beyond a reasonable doubt that the error did not contribute to the conviction. We overrule Mason's second issue.

**Outcry Witness**

In his third issue, Mason contends that Karen was the proper outcry witness and that the trial court erred by designating Lomas.

We review a trial court's admission of testimony from an outcry witness under an abuse-of-discretion standard. *Gibson v. State*, 595 S.W.3d 321, 325 (Tex. App.—Austin 2020, no pet.). A trial court has "broad discretion" in determining who qualifies as a proper outcry witness, and we will uphold the trial court's ruling if it is reasonably supported by the record and within the zone of reasonable disagreement. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).

Hearsay statements are generally inadmissible. *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). Article 38.072 of the Texas Code of Criminal Procedure

23

creates a hearsay exception in the prosecution of certain sexual offenses committed against children for the admission of a child's first outcry of sexual abuse to an adult. *See id.* "This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime." *Id.* at 811. To be admissible under Article 38.072, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernible manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia*, 792 S.W.2d at 91). In general, the proper outcry witness is the first adult to whom the alleged victim relates "how, when, and where" the abuse occurred. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd). "We interpret the statute to mean that the 'first person' refers to the first adult who can remember and relate at trial the child's statement that in some discernible manner describes the alleged offense." *Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd).

Here, Mason contends that Greg described the same incident of abuse to the forensic interviewer that he had already told his mother about, just in additional detail. *See Robinett v. State*, 383 S.W.3d 758, 761–62 (Tex. App.—Amarillo 2012, no pet.) ("The proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense."). We disagree. Karen testified at the outcry hearing that Greg told her that Mason and Maret asked him to have sex with them, and that she then stopped Greg from going into any detail. Lomas testified that Greg told her that Mason and Maret made him have sex with them, and the specifics of those sex acts. The trial court could have reasonably concluded that Lomas

24

was the first adult to whom Greg related how, when, and where the abuse occurred. *See Reyes*, 274 S.W.3d at 727.

We conclude that the trial court did not abuse its discretion when it designated Lomas as the outcry witness. We overrule Mason's third issue.

## Jury Charge

In his fourth issue, Mason contends that he suffered egregious harm from the application paragraph in the court's charge to the jury, which he contends did not require the jury to find that the last act of sexual abuse occurred on at least the 29th day after the first act.

Jury charge error claims are reviewed under a two-pronged test in which the appellate court must determine: (1) whether the charge was erroneous, and (2) if there was an error, whether the error was harmful to the defendant. *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Here, the charge instructed the jury, in relevant part:

> To find the defendant guilty of continuous sexual abuse of a young child, you must determine whether the state has proved, beyond a reasonable doubt, four elements. Those elements are, 1. The defendant, in Milam County, Texas, on or about December 1, 2018, through September 12, 2020, committed two or more of the following acts of sexual abuse: The defendant intentionally or knowingly caused the sexual organ of [Greg], a child younger than 14 years old, to contact or penetrate the mouth, anus, or sexual organ of another or the defendant intentionally or knowingly caused the mouth of [Greg], a child younger than 14 years old, to contact the sexual organ of another. 2. These acts were committed during a period that was 30 or more days in duration . . . .

Mason relies on multiple cases from our sister courts concerning complaints that the jury instructions allowed the jury to convict the defendant of continuous sexual abuse without

finding that two or more acts of abuse were committed during a period of 30 days or more. The first is *Smith v. State*, 340 S.W.3d 41 (Tex. App.—Houston [1st Dist.] 2011, no pet.), a case in which our sister court concluded that the charge was erroneous when it instructed the jury that it could find the defendant guilty if it found that "on or about the 1st day of December, 2007, through the 1st day of September, 2008, which said time period being a period that was 30 days or more in duration, in Brazoria County, Texas, the defendant . . . committed two or more acts of sexual abuse against [the complainant]." *Id.* at 50. The court concluded that the instruction implied that because December 2007 and September 2008 were more than 30 days apart, any two acts of abuse committed within that time period were sufficient to support a conviction, even if the acts of abuse themselves were not separated by 30 days. *See id.* at 50–51. However, unlike the charge at issue in *Smith*, the application paragraph here did not imply that the 30-day period was satisfied by the larger time period included in the instruction. *See id.* at 50. The instruction here does not imply that the jury may calculate the 30-days by any measure other than the alleged acts of abuse. Rather, the charge specifically separated the 30-day duration element and required the jury to find that the alleged acts of aggravated assault were committed during a period of at least 30 days.

Mason also relies on *Turner v. State*, 573 S.W.3d 455 (Tex. App.—Amarillo 2019, no pet.) and *Pelcastre v. State*, 654 S.W.3d 579 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd). In *Turner*, the challenged instruction stated,

> Now bearing in mind the foregoing instructions, if you unanimously believe from the evidence beyond a reasonable doubt, that the defendant, DAVID BLAKE TURNER, on or about June 1, 2013 through August 1, 2013, in the County of Randall, and State of Texas, during a period that was 30 days or more in duration and when the Defendant was 17 years of age or older, did intentionally or

26

> knowingly commit two or more acts of sexual abuse against [victim], a child younger than 14 years of age, namely the following acts: [predicate acts described].

573 S.W.3d at 462. Our sister court held that the challenged paragraph was erroneous based on its reasoning that although it tracked the language of the statute, the statute was not "an example of clarity" regarding the 30-day duration element, but affirmed the conviction after determining the error did not cause egregious harm. *Id.* at 462–63. In *Pelcastre*, our sister court reviewed a jury instruction that it considered "very similar" to the charge language challenged in *Turner*. *See Pelcastre*, 654 S.W.3d at 587. The court in *Pelcastre* noted that the holding of *Turner* conflicted with its own holding in an unpublished case, in which it concluded that language "extremely similar" to the challenged language in *Turner* and at issue in *Pelcastre* was not error. *Id.* Based on the noted "conflicting decisions," the court conducted a harm analysis without concluding whether there was error and determined the defendant had not suffered egregious harm. *Id.* at 588–90.

Although the language reviewed in *Turner* and *Pelcastre* is more similar to the charge in this case than the language reviewed in *Smith*, as noted above, the charge here specifically separated the element that the "acts were committed during a period that was 30 or more days in duration." Further, the Fourteenth Court of Appeals has addressed the reasoning in *Turner* and *Pelcastre* that relied on its *Smith* decision. *See Lewis v. State*, 693 S.W.3d 453 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd).[6] In *Lewis*, our sister court reviewed language similar to the language challenged in *Turner* and *Pelcastre* and determined that it was not error for the charge language to track the statute and determined that the challenged language did not

---

[6] We note that *Lewis* was decided after Mason's opening brief and that he brought it to our attention in his reply brief.

27

imply a non-statutory duration requirement, unlike in *Smith*. *Id.* at 463. It also noted that "the Third, Fourth, and Fifth Courts of Appeals, in unpublished opinions, have rejected the same argument appellant advances in this case and involving materially indistinguishable charge language." *Id.* (citing *Hernandez-Silva v. State*, No. 03-19-00219-CR, 2020 WL 4726632, at *7-8 (Tex. App.—Austin Aug. 14, 2020, pet. ref'd) (mem. op., not designated for publication)).

Here, the instruction tracks the language of the statute. *See* Tex. Penal Code § 21.02(b); *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge."). In addition to cases from our sister courts of appeals not being binding precedent, *see Ex parte McDonald*, 606 S.W.3d 856, 863 (Tex. App.—Austin 2020, pet. ref'd), we are not persuaded that the challenged charge language allowed the jury to convict Mason if it determined that he committed at least two acts of sexual abuse within a period of less than thirty days. Rather, the charge required that the jury find under the statutory duration requirement that at least two acts of sexual abuse occurred during a period of thirty or more days in duration.

We cannot conclude that the trial court's application paragraph contained error. *See Casey v. State*, 215 S.W.3d 870, 887 (Tex. Crim. App. 2007) (holding that charge tracking language of statute was not erroneous). Because we have concluded there is no trial court error, we do not analyze harm in this case. *See* Tex. R. App. P. 47.1. We overrule Mason's fourth issue.

## CONCLUSION

Having overruled all of Mason's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Darlene Byrne, Chief Justice


Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed:   January 31, 2025

Do Not Publish